against the plaintiff for $1,014.70. The plaintiff served a reply controverting the counterclaim. Baldwin testified that the plaintiff orally agreed to save him harmless from all liability on the bond, which was denied by the plaintiff. This important issue of fact was not determined by the referee.

It is not material whether the persons who worked on this sewer and those who furnished materials therefor could have maintained actions on the bond against the sureties for the recovery of their claims, provided the plaintiff paid the claims pursuant to the request of the defendants, or of either of them; and, in case he paid the claims for Green, or for Green and Baldwin, if they were partners, in good faith, and because of his supposed liability on the bond, he has the right to be subrogated in the place of the creditors, and recover the sums paid of Green, or of Green and Baldwin, if they were partners.

In determining this action, the referee should have ascertained and stated the amount paid or incurred by the plaintiff for the benefit of the defendants, or of either of them, on account of the bond, before the plaintiff and Baldwin undertook the completion of the contract, which sum should have been charged against Green and Baldwin as principal debtors, if they were partners, and, if not, then against Green alone; and, if the plaintiff paid and incurred these sums on the request, or with the knowledge and consent, of Baldwin, he not being a partner with Green, he, as between himself and the plaintiff, should be charged as a co-surety with one-half of such sums. An account of the profits made or the losses incurred by Lyth and Baldwin in the completion of the contract should have been ascertained, and a judgment directed, determining the rights of these litigants arising out of the bond and the completion of the contract. This is essentially an equitable action for the adjustment of the rights arising between a principal and his sureties, and also between the sureties; and the transactions are so connected that the rights of the parties should be determined in this action. The plaintiff, by appropriate exceptions taken to the referee's report, and to his refusal to pass upon the important issues arising between the parties, raised the questions herein discussed.

The judgment should be reversed, and a new trial granted before another referee to be appointed by this court, with costs to abide the event. All concur.

(20 App. Div. 571.)

STROME v. LONDON ASSUR. CORP.

(Supreme Court, Appellate Division, Second Department. October 5. 1897.)

1. INSURANCE—APPRAISEMENT AND ESTIMATE—INADEQUACY.
    An appraisement and estimate under the standard policy of fire insurance cannot be set aside for mere inadequacy.

2. SAME—EVIDENCE—OFFER TO COMPROMISE.
    Even if mere inadequacy would suffice to avoid an appraisement and estimate under the standard policy, the admission of evidence on behalf of plaintiff, in an action brought for that purpose, as to what the company offered to pay by way of compromise, would be reversible error, if there were no separate and independent question and finding of misconduct.

47 N.Y.S.—31

**3. SAME—DISAGREEMENT OF APPRAISERS.**

The provision of a policy that the appraisers, in the event of their disagreement, shall submit their differences to an umpire, requires the latter to examine and consider both appraisements in arriving at his own determination.

Appeal from special term, Kings county.

Action by Alfred Strome against the London Assurance Corporation. From a judgment entered on a decision in favor of plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Willard Parker Butler, for appellant.

William M. Benedict, for respondent.

WILLARD BARTLETT, J. This action was brought with a twofold object: (1) To set aside an award or estimate made under the New York standard policy of fire insurance as to the amount of loss suffered by the plaintiff under such a policy issued to him by the defendant corporation; and (2) to recover the sum of $430.56, which the plaintiff alleged to be his actual damage by reason of a fire against which the policy insured him. The plaintiff was successful in both aspects of the case. The trial court set aside the award or estimate of $100, on the ground of its gross and palpable inadequacy, and also because of the misconduct of the umpire, and gave the plaintiff a money judgment for the full amount which he claimed. Upon the present appeal the defendant insists that such an estimate or award cannot be set aside for mere inadequacy; that, even if it could be vacated for that reason, the learned trial judge received evidence on this branch of the case which was inadmissible; and that misconduct cannot be predicated upon the acts of the umpire of which the plaintiff complains.

The insured property, which was destroyed by fire, consisted chiefly of furniture, carpets, household goods, and clothing. Being unable to agree upon the amount of the loss, the parties appointed appraisers; Mr. Alfred L. Beatty being selected by the plaintiff, and Mr. Adolph Friedman by the defendant. The former estimated the plaintiff's total loss at $440.22, while the latter made it only about $80. In view of this disagreement, the appraisers then chose Mr. Joseph Wechsler to act as umpire, under the provisions of the policy. Mr. Wechsler, with Mr. Friedman, the defendant's appraiser, thereupon determined the amount of the loss to be $100, the plaintiff's appraiser, Mr. Beatty, declining to sign the award.

The appraisement and estimate under the New York standard policy of fire insurance is not the same proceeding as an arbitration and award at common law or under the Code. Fleming v. Assurance Co., 75 Hun, 530, 27 N. Y. Supp. 488; Enright v. Insurance Co. (Sup.) 15 N. Y. Supp. 893. Hence the decisions in cases of arbitration and award are not always applicable to the solution of questions arising under a fire insurance appraisement. But even in arbitrations, strictly speaking, the courts do not exercise the power of annulling the determination simply because the amount awarded seems

to be inadequate (Masury v. Whiton, 111 N. Y. 679, 18 N. E. 638); and we are of the opinion that no more stringent rule should be applied to insurance appraisements, which are proceedings of a far less formal character (De Groot v. Insurance Co., 4 Rob. [N. Y.] 504). We do not say that an estimate by the appraisers and umpire under an insurance policy might not be so small as to indicate partiality or corruption, when viewed in connection with other circumstances in the case; but, except as tending to establish misconduct, we think that inadequacy, pure and simple, cannot be considered as a ground for setting aside such an appraisement. If, therefore, the judgment below had no other basis, it would lack sufficient support in the decision; and, even if mere inadequacy would suffice to avoid the award, the admission of evidence as to what the corporation offered to pay by way of compromise was error, which would demand a reversal, were there no separate and independent question of misconduct in the case. Smith v. Satterlee, 130 N. Y. 677, 29 N. E. 225. But there is such a question, which seems to be wholly separable from the other, and which appears to have been correctly decided in favor of the plaintiff.

We think the evidence may be regarded as establishing an utter refusal and neglect on the part of the umpire properly to perform his duties, and that his neglect and refusal amounted to misconduct, in a legal sense, and require the court to withhold its sanction from an award made under such circumstances. For the obligations undertaken by the appraisers and the umpire, we must look to the language of the policy. It provides that, in the event of a disagreement as to the amount of loss, the same shall be ascertained by two competent and disinterested appraisers, the insured and the insurance company each selecting one, "and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of the loss." The precise manner in which the appraisers were to proceed was not prescribed by the terms of the policy. As was said in De Groot v. Insurance Co., supra, they "were at liberty to arrive at a conclusion in regard to the value of the articles they were called upon to estimate in such way as they thought proper. They were not bound to the strict judicial investigation of an arbitration." As to the umpire, however, the requirement of the policy that the appraisers, in the event of their disagreement, should submit their differences to him, carried with it the clearest implication of duty on his part to examine and consider the appraisement of each in arriving at his own determination. But, if the evidence in behalf of the plaintiff be true (and the trial court evidently believed it), Mr. Wechsler declined and omitted to do this. The umpire appears to have acted in a hasty and most perfunctory manner in performing his functions under the policy. He went to the plaintiff's residence, where the damaged goods were, with the defendant's appraiser, Mr. Friedman, and was there half an hour before the plaintiff's appraiser, Mr. Beatty, arrived. He refused to go over

the goods with Mr. Beatty, saying that he had already gone over them with Mr. Friedman. He would not even look at Mr. Beatty's list of the articles and the values put upon them. He said he did not have time, and he scarcely listened to anything that Mr. Beatty said. Such was the account of Mr. Wechsler's conduct given by Mr. Beatty, and, although Mr. Friedman described it differently, the trial judge was authorized to accept the statement of the plaintiff's appraiser. His testimony indicates quite clearly that the umpire reached a determination in favor of the defendant after hearing the defendant's side of the case only, and practically refusing to hear the appraiser for the plaintiff. A decision made in this manner cannot be allowed by a court of equity to stand.

In the opinion at special term, reference is made to the fact that the umpire was not sworn; but the formal decision does not mention this as one of the grounds upon which the judgment was rendered, nor does the respondent's counsel, in his brief, cite any authority in support of the objection. It need not be passed upon, in view of our conclusion that the judgment can be and should be sustained by reason of the umpire's refusal and neglect properly to discharge his duties, irrespective of any other point discussed upon the trial or on this appeal.

Judgment affirmed, with costs.    All concur.