(59 App. Div. 525.)

KAISER v. HAMBURG-BREMEN FIRE INS. CO. OF HAMBURG &
BREMEN et al.

(Supreme Court, Appellate Division, Fourth Department.   March 12, 1901.)

1. INSURANCE—FIRE POLICY—ARBITRATION—PREJUDICED APPRAISER—FRAUD.

A fire policy provided that, in the event of disagreement as to the
amount of loss, the question should be determined by disinterested arbi-
trators.   An agent representing several companies interested in plaintiff's
loss represented that W. was a business man, who had never appraised a
loss for any of the companies, and he was selected by the agent as the
company's appraiser.   As a matter of fact, W. was a professional ap-
praiser, and the agent knew that he had done appraising for companies,
including those interested; and another agent, who had heard the repre-
sentation made to plaintiff, knew W. to have been occupied for several
years in appraising, but did not communicate his knowledge to plaintiff.
W. and the appraiser selected by plaintiff (the latter having no experience)
visited the premises, and found that the steam-heating plant and plumbing
were so completely destroyed that no notion of their former value could be
formed from a view.   The appraisers refused to receive any information
from an employé of W. as to the value of the plant, and no notice was
given the insured of the time and place of the meeting of the appraisers.
Held that, it appearing the award was inadequate, the same would be set
aside because of a prejudiced arbitrator having been fraudulently imposed
on plaintiff.

2. SAME—MEETING OF ARBITRATORS—NOTICE TO INSURED.

An insured should have notice or knowledge of the meeting of the ap-
praisers of his loss, and an opportunity to draw their attention to the
items of loss and make representations concerning the nature thereof.

3. SAME.

The appraisers selected to determine the amount of loss suffered by
insured are not generally obliged to give insured any formal notice of the
time and place of their meeting, or to hear evidence.

4. SAME—INADEQUACY OF AWARD.

Where the appraisers selected to determine the amount of loss suffered
by insured in a fire policy awarded $3,031, and in a suit by insured to
have the award set aside on the ground that the companies' agent fraudu-
lently represented to him that a certain appraiser was an unprejudiced
one, and the referee found damages amounting to $3,930.28, and the plain-
tiff's evidence showed that the loss was in excess of the latter sum, the
award was so much below the loss as to sustain a decision setting the
award aside; it appearing that the contention as to the appraiser was
well taken.

5. SAME—AGENTS.

Where an agent representing several insurance companies interested in
a fire loss fraudulently represented to insured that the appraiser selected
by the agent was an unprejudiced one, and a certain company, whom the
agent did not represent at the time, afterwards signed the appraisal
agreement, the award was void as to such company.

6. SAME—EVIDENCE OF CUSTOM.

Where an agent representing several insurance companies fraudulently
stated to insured that an appraiser selected by him was unprejudiced,
in a suit by insured against one of the companies evidence that the agent
stated that he was acting for all the companies, and as to the custom
of insurance adjusters who first arrive to represent the other companies,
was erroneously admitted.

Appeal from judgment on report of referee.

Action by Jacob Kaiser against the Hamburg-Bremen Fire Insur-
ance Company of Hamburg & Bremen and others.   From a judg-
ment in favor of plaintiff, defendants appeal.   Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

D. N. McNaughtan and Seward A. Simons, for appellants.

Moses Shire, for respondent.

LAUGHLIN, J.   This is an action to set aside an award made by appraisers appointed pursuant to the arbitration clause contained in a standard insurance policy, and to recover on the policy for a fire loss.   The referee found that the plaintiff's signature to the appraisal agreement was procured through fraud, and that consequently said agreement and the award made thereunder were void, and should be vacated and set aside.   The policy provides that the loss or damage shall be ascertained or estimated according to the "actual cash value" of the property at the time of the fire, "with proper deductions for depreciation, however caused," and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality.   It further provides that:

"In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, —the insured and this company each selecting one,—and the two so chosen shall first select a competent and disinterested umpire.   The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss.   The parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expense of the appraisal and umpire."

The appraisal agreement was executed by plaintiff, this defendant, and three other insurance companies interested in the loss, viz. the British-American Insurance Company, the Svea Assurance Company, and the Fire Association of Philadelphia.   The appraisal was demanded by one Locke, who at that time was authorized to represent all of these companies excepting this defendant.   The evidence presented in behalf of plaintiff was sufficient to authorize a finding that Locke represented to plaintiff that Vanderwerf, the appraiser named by him, was a business man residing in Rochester, and not a professional appraiser for insurance companies; that he had never appraised for any of the companies interested in this loss; and that he was a proper man to act as appraiser.   Plaintiff was not acquainted with Vanderwerf or with his business, and relied upon these representations, and did not discover their falsity until after the appraisal.   It was shown upon the trial that Vanderwerf's principal business for the past four or five years had been representing insurance companies in appraising their losses, and that he had during this time made, on an average, 100 such appraisals annually. It also appeared that Locke knew that Vanderwerf had represented this defendant and the Fire Association of Philadelphia as appraiser at least once, and the British-American Insurance Company often, and possibly 50 times.   Locke also knew that Vanderwerf had seldom acted as appraiser for the insured, and that for many years he had frequently represented insurance companies as appraiser. Sturtevant, the general agent of the Svea Company, who was present at the negotiations for the appointment of appraisers, and heard

the representations made by Locke, testified that Vanderwerf, to his knowledge, had for the past six or seven years acted most of the time as appraiser for fire insurance companies; but he did not communicate this knowledge to plaintiff. Fessenden, a special agent of insurance companies, who had often employed Vanderwerf, considered him a "good man," who "does fairly well by the insurance companies." Before the presentation of any proofs of loss or meeting the plaintiff, or attempting in any manner to negotiate a settlement, Locke and Sturtevant determined to urge an appraisal, agreed upon Vanderwerf as the appraiser for the companies, and prepared an appraisal agreement.

In Bradshaw v. Insurance Co., 137 N. Y. 137, 32 N. E. 1055, where it was represented to the insured that an appraiser named by the company was "entirely disinterested and indifferent," when, as a matter of fact, he had frequently represented the same and other companies, the court held that the clause in the policy calling for "competent and disinterested" appraisers means one who is not "biased or prejudiced," and that in view of the representations a question of fact was presented,—as to whether the appraiser, in view of his having so often acted for the defendant and other insurance companies, was disinterested; and the court say:

"I think the evidence in this case is ample to justify the finding of the court that the representations were made, that they were false, that they induced the consent to the appointment of the appraiser, and that he was not disinterested. While it may be true that, in the appointment of these appraisers each party nominates some one who may be supposed friendly to the side nominating him, yet he should at the same time be disinterested, or, in other words, fair and unprejudiced. The duties of these appraisers are to give a just and fair award,—one which shall honestly and fairly represent the real loss actually sustained by reason of the fire; and it is not the duty of either appraiser to see how far he can depart from that purpose and still obtain the consent or agreement of his associate, or, in case of his refusal, then of the umpire. It is proper and to be expected that all the facts which may be favorable to the party nominating him shall be brought out by the appraiser, so that due weight may be given to them; but the appraiser is in no sense, for the purpose of an appraisal, the agent of the party appointing or nominating him, and he remains at all times under the duty to be fair and unprejudiced, or, in the language of the policy, disinterested. When a false statement is made in regard to the attitude of a proposed appraiser, for the purpose of inducing consent to his appointment, which is in that way obtained, and where concealment is practiced in regard to his real attitude to the company nominating him, and when in fact he is not disinterested, good ground is shown for setting aside an appraisal which is grossly below the actual loss sustained, although it has been concurred in and agreed to by the appraiser nominated by the insured. * * * Whether this agreement for appraisers be determined to be an arbitration or not is immaterial. The parties, in the policy, had stated what kind of appraisers were to be appointed; and each party had the right to believe that any specific representation of the other as to any material fact in regard to a proposed appraiser being disinterested were true and might be relied on, and if they turned out false, under the circumstances herein alleged and found, a good cause of action was proved."

If the facts already adverted to are not sufficient to sustain a finding that Vanderwerf was not a disinterested, unbiased, unprejudiced appraiser, the finding may be supported by the conduct of the appraisers. The appraiser designated by the plaintiff was inexperienced. He and Vanderwerf met and visited the ruins one afternoon

· in the absence of plaintiff. According to the testimony of one of plaintiff's employés in charge, which they deny, he attempted to make representations and explanations to them concerning the steam-heating appliances and plumbing, which were so completely destroyed that no accurate judgment as to their condition and value before the fire could be formed by a mere view or observation at that time, and the appraisers refused to receive any information. The evidence tended to show that plumbing and steam-heating appliances in the second and third stories of the building had been put in new within two years at a cost of $1,100, which was the fair value of the work and materials, and they were a total loss. The appraisers estimated the cost value of these items at $250, and deducted therefrom about 21 per cent. for depreciation. One of the appraisers admitted that this valuation was wholly guesswork, as they could not see the plumbing, and could tell very little about the steam heating. It was a hasty appraisal, occupying only about 2½ hours, and there was very little disagreement between the appraisers. Vanderwerf insisted on a reduction from the cost value of the buildings and fixtures as estimated by them of 25 per cent. for depreciation, and the appraiser named by plaintiff considered this too high, and they compromised upon $800, or about 21 per cent. The buildings had been repaired and improved quite extensively within two years before the fire, and there was evidence tending to show that they were practically as good as new. The havoc wrought by the fire was such that the appraisers could not determine accurately by view the extent and nature of these improvements, and the condition of repair that the building was in, and they made no inquiry concerning the same.

It was contended that plaintiff had no notice of the time and place of the meeting of the appraisers, but the evidence fails to show whether he had notice or not; and the burden was doubtless upon him of showing want of notice, if he were seeking to set aside the award upon that ground. Butler v. Mayor, etc., 1 Hill, 489. But the sole ground upon which plaintiff seeks to avoid the award is fraud, and the failure to give notice can have no bearing, excepting upon the question as to the misconduct of the appraisers. The rule at common law, and under the statute and Code, requiring notice to the parties of the meeting of arbitrators, and an opportunity to present evidence (Halstead v. Seaman, 82 N. Y. 27; Day v. Hammond, 57 N. Y. 479), has not been applied with strictness in all cases of insurance appraisals. Such appraisals are regarded as still more informal, and the appraisers are not obliged to give the claimant any formal notice or to hear evidence,—at least, not in all cases; and yet it is quite clear that, unless the insured waive it, he must either have notice or knowledge of the meeting of the appraisers, and an opportunity to draw their attention to the items of his loss, and make representations and explanations to them concerning the nature thereof, and thus insure a consideration of his entire claim, and guard against omissions and misconduct. Linde v. Insurance Co., 50 N. Y. Super. Ct. 362; Remington Paper Co. v. London Assur. Corp., 12 App. Div. 218, 43 N. Y. Supp. 431; Strome v. Same, 20

App. Div. 571, 47 N. Y. Supp. 481, affirmed in 162 N. Y. 627, 57 N. E. 1125; Fleming v. Assurance Co., 75 Hun, 530, 27 N. Y. Supp. 488; Enright v. Insurance Co. (Sup.) 15 N. Y. Supp. 893; De Groot v. Insurance Co., 4 Rob. (N. Y.) 504, citing Elmendorf v. Harris, 5 Wend. 516, which was reversed in 23 Wend. 628; Insurance Co. v. Moore (Tex. Civ. App.) 46 S. W. 1131; Stemmer v. Insurance Co., 33 Or. 65, 49 Pac. 588, 53 Pac. 498. Notwithstanding the observation of the court in Fleming v. Assurance Co., supra, to the effect that insurance appraisers are not authorized to take evidence, it would seem that as to items of property wholly destroyed, or otherwise not visible or open to inspection, the appraisers must act upon information or evidence, for otherwise they could not make a just estimate of the loss. We think it is a fact that may be taken judicial notice of that it is usual and customary for the owner or his representative to make statements to the appraisers, and their failure in this instance to listen to such statements is some evidence in support of the contention that Vanderwerf was not an unprejudiced, unbiased, and disinterested appraiser. Halstead v. Seaman, 82 N. Y. 27; Van Cortlandt v. Underhill, 17 Johns. 405; Insurance Co. v. Moore (Tex. Civ. App.) 46 S. W. 1131; Strome v. Assurance Corp., 20 App. Div. 571, 47 N. Y. Supp. 481. We are therefore of opinion that the findings of the referee that plaintiff's signature to the appraisal agreement was procured by false representations, upon which he relied, are warranted by the evidence, and that Vanderwerf was not an unbiased, unprejudiced, disinterested appraiser.

The next question is whether the award is so inadequate that it should be set aside. It is urged that by the language herein quoted from the Bradshaw Case the court of appeals laid down the rule that the award must be "grossly below the actual loss sustained," to require that it be set aside. This language is not to be taken literally. If the appraisal agreement is void, and substantial damages have been sustained, it must be that the property owner may have an action to set aside the award and recover his damages; but in the present case the appraisers awarded plaintiff $3,031, while the referee has found that his damages amounted to $3,930.28, being $899.28 more than the award. If this finding be supported by the evidence, it is manifest that the award was even grossly inadequate, if that were necessary. Plaintiff's evidence showed that his loss was far in excess of the amount awarded by the referee, and is ample to sustain the decision in this regard.

The appellant in this case contends that the award made by the appraisers cannot be set aside, as against it, even though plaintiff was induced to sign the agreement through the fraud of Locke, inasmuch as Locke did not represent it, and was not authorized to act in its behalf. The evidence indicates, but does not clearly show, that the appraisal agreement was sent to this defendant's agent by Locke for approval and signature after plaintiff had signed and forwarded it to Locke. It does not appear that this appellant knew of the representations made by Locke. It is urged on behalf of respondent that the insurance company, by subsequently signing the appraisal agreement, acknowledged or ratified Locke's authority to rep-

resent it. If the appraisal agreement be a joint contract, then it is clear that, plaintiff's signature having been obtained by the fraud of one of the parties, the agreement would be wholly void. I think the same result follows even if it be a several agreement. Both public policy and justice forbid that the insurance company should be permitted to enjoy the fruits of this appraisal agreement, when the plaintiff's consent thereto was obtained by fraud. Were it not for the fraud and deception practiced upon him, plaintiff would not have signed the agreement. His signature having been procured by fraud, even though it be not the fraud of this appellant, we know of no principle of law or equity which, under such circumstances, precludes him from repudiating the contract upon discovering the fraud, at least where there are no facts which work an estoppel. While no case is cited, and I find none directly in point, it seems quite clear, upon principle, that, while appellant may not be responsible for the fraud, it cannot hold plaintiff to the contract, inasmuch as his consent was fraudulently obtained. Dunning v. Leavitt, 85 N. Y. 30, 35; Fairchild v. McMahon, 139 N. Y. 290, 34 N. E. 779. If this rule be not adopted, the door will be left wide open for the perpetration of fraud. An irresponsible company may send an irresponsible agent to negotiate an appraisal agreement for the benefit of itself and other solvent companies, and, through misrepresentations, with which it would be difficult to connect the solvent companies, secure the appointment of an improper appraiser. An award thus made would fix the liability of the solvent companies to the assured if the rule contended for by appellant should be applied. It was doubtless error to receive, under objection and exception, the evidence that Locke stated that he was acting for all the insurance companies, and as to the custom of the insurance adjusters who first arrived to represent the other companies. Locke's authority to represent this appellant was not established by his own declarations nor by any custom; but, in the view we have taken of the question, these errors are immaterial. The other exceptions urged upon our attention have been examined, but they do not present reversible error or require extended consideration.

It follows from these views that appellant is not entitled to the benefit of the appraisal agreement, and that the judgment appealed from should be affirmed, with costs. All concur; ADAMS, P. J., and McLENNAN, J., in result only.