SCHMITT BROTHERS, Respondent and Appellant, *v.* BOSTON INSUR ANCE COMPANY, Appellant and Respondent.

*Insurance — what appraisal of loss by fire, made by the appraiser for the insurance company and by the umpire, will be set aside — right of the insured or his appraiser to be heard and to have the property valued in detail — interest, when allowable.*

Where a difference arises as to the amount of the loss occurring under a policy of fire insurance, and, pursuant to a clause contained therein, the insured and the insurance company each appoint an appraiser and the appraisers select an umpire to determine the amount of the loss, an award made by the umpire and the appraiser appointed by the insurance company in the absence of the appraiser appointed by the insured and without notice, either to him or to the insured, will be set aside at the suit of the insured, even though there is no claim of bad faith on the part of the umpire or the appraiser appointed by the insurance company.

Upon such an appraisal the insured is entitled to have the value of the property destroyed considered in detail rather than in gross and to be heard upon that subject either by himself or through his appraiser, and it is improper for the appraisers to make an award in gross without going over the value of the property in detail.

Where, in an action upon a policy of fire insurance which provided that the loss should be paid within sixty days after the service of proofs of loss, it appears that an honest appraisal of the goods destroyed would have disclosed the fact that their value was in excess of the amount of the policy, the plaintiff is entitled to interest upon the amount of the policy for the period commencing sixty days after the service of the proofs of loss.

O'BRIEN, J., dissented from the last proposition.

CROSS-APPEALS by the plaintiff, Schmitt Brothers, and the defendant, the Boston Insurance Company, from a judgment of the

Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 6th day of November, 1902, upon the decision of the court rendered after a trial at the New York Special Term.

The defendant appeals from the whole of said judgment and the plaintiff appeals from so much thereof as fails to award plaintiff interest on the amount recovered.

*Austen G. Fox,* for the plaintiff.

*Edgar J. Nathan,* for the defendant.

HATCH, J. :

This action was brought to set aside an award of $9,000, made pursuant to the provisions of an insurance policy which plaintiff had taken out from the defendant, on the ground of alleged misconduct and irregularity of the appraisers and umpire, and to recover the full amount of the policy of insurance. The plaintiff was the owner of a lot of colonial furniture, which it had purchased from the estate of a deceased collector for the sum of $13,000, and had stored in a warehouse. It procured it to be insured under several different policies of insurance, aggregating $20,000. The property was almost entirely destroyed by fire, and the assured and defendant not being able to agree upon the amount of the loss, each party chose an appraiser and these two appraisers chose an umpire. Pursuant to a clause in the insurance policy these three were to make an appraisal of the property destroyed. Prior to the fire the plaintiff had sold one-half of the property which it had purchased as aforesaid for $30,000, and the portion remaining unsold was deemed to be as valuable as that disposed of. The appraisers and umpire met at the warehouse where a portion of the goods which had been saved from the fire, but which were rendered practically worthless, was piled in heaps. This meeting took place in the month of December, and it being very cold at that time, they were unable to make a practical examination and adjourned to meet again at the same place. At the adjourned meeting they did practically nothing but to casually discuss the value of a few of the articles in question and again agreed to adjourn until after the Christmas holidays. A few days before Christmas the appraiser of the defendant sent for

the plaintiff's appointee to come to his shop.   Upon his arrival there he found the umpire also in attendance.   He was asked to make an offer as to what he would be willing to take as representing the loss. This he declined to do and requested the defendant's appraiser to make an offer of what his company would be willing to give. Thereupon the defendant's appraiser made an offer of $7,000, which plaintiff's appraiser refused, and after some desultory conversation the plaintiff's appraiser left them and the other two repaired to the café of the Victoria Hotel where they made an award of $9,000 in a lump sum, without having considered any statements made by the insured or taken any evidence as to the value of the property aside from the inspection which they had previously made of it and their knowledge of its character.   No evidence was considered or discussion had of the value of the property burned out of sight.   The court found that the appraisal and award were not the result of investigation and judgment; that there was misconduct upon the part of the umpire and appraisers in their proceedings; that the award, as made, was grossly and palpably inadequate to the actual loss sustained by the plaintiff, and he directed a judgment that the same should be vacated and set aside.   The court further found that the actual loss sustained by the plaintiff was $28,000, and that it was entitled to recover from the defendant the full amount of the policy of insurance, the subject of the action, amounting to the sum of $2,500, with costs and an extra allowance.   He refused to find that the plaintiff was entitled to interest upon the amount found due.

The plaintiff and its appraiser testified that they had no notice or knowledge that the umpire and the appraiser for the defendant intended to make an appraisal at the time when the appraisement and award were made.   Indeed, there is no substantial dispute in the testimony respecting such matter.   After the plaintiff's appraiser had met the appraiser for the defendant and the umpire, and had failed to agree upon the sum which should be awarded in measurement of the loss, the parties went to the Ashland House and there partook of some refreshments and further discussed the matter, without, however, reaching an agreement.   The umpire, Graham, testified that they then left the Ashland House and walked up Fourth avenue to Twenty-seventh street.   He was asked: " Q. Had you any con-

versation on the way ?   A. Yes, we were talking over matters there. Mr. Lanthier (defendant's appraiser) said : ' I would like this thing decided.'   ' Well,' I said, ' I will decide it to-night.   If you will come to the Victoria Hotel I will sit down and go over the thing and settle it.'   Q. What did Mr. La Place (appraiser for plaintiff) say ? A. Mr. La Place said, ' Well, I am going home,' and he left us. Q. Up to this time had Mr. La Place refused to make any conces- sion in his demand for twenty-seven or twenty-eight thousand dol- lars ?   A. Yes.   Q. In parting did he say, in substance, that you and Mr. Lanthier could close it without him ?   A. No, he did not say that.   Q. Did you say to Mr. La Place that you and Mr. Lanthier were going to the Victoria to settle it ?   A. No, I told him I was going to the Victoria ; if they wanted to come they could — either of them.   Q. Did you go to the Victoria with Mr. Lanthier ?   A. I went to the Victoria.   Q. Did you there sign the award for $12,000 as the value before the fire and $9,000 as damage afterwards ?   A. I sat down there for an hour and a half and we discussed the thing.   Q. And signed this award ?   A. I signed it; the next morning I met Mr. Lanthier and swore to this award before a notary public on December 21st, 1900.   Q. In these conferences between the appraisers at which you were present, the question of value of the goods burned out of sight was taken up, was it not ?   A. No, it was not."

It is thus apparent that the plaintiff received no notice whatever that the umpire and the appraiser for the defendant would upon that night consider the question and reach a final determination. On the contrary, the information which was given by the umpire to Mr. La Place was, that if he would go to the Victoria Hotel they would settle it.   Neither the umpire nor the appraiser made any objection when La Place stated that he was going home, nor did they in anywise indicate to him that they proposed then to reach a conclusion and make an award.   On the contrary, the statement of the umpire was that he was ready to do it if the appraisers would go to the Victoria Hotel with him, but there was nothing said or done tending to indicate to La Place that an award would be made in his absence.   It is probably true that no formal notice to the insured was necessary to be given of the meetings or proceedings by the appraisers when they act in good faith and in the usual

course. Such is the effect of our decision in *Remington Co.* v. *London Assurance Corporation* (12 App. Div. 218). In that case, however, there was no suggestion of any misconduct upon the part of the appraisers, or either of them. In an ordinary appraisement, where the parties charged with that duty act in a proper manner, no notice to the insured is necessary, because he is at all times represented by the appraiser whom he has selected, and who is there for the purpose of protecting his interest. It is quite a different thing where an umpire and appraiser for the defendant assume to enter upon a consideration of the questions necessarily involved in making the award, in the absence of the appraiser for the insured, and without notice either to him or to the insured. Under such circumstances, the insured stands without that representation to which he is entitled, and an appraisement and award made under such circumstances will not be permitted to stand, even though there be no basis upon which to predicate a charge of bad faith. It is not such an appraisement as the law contemplates, or for which the contract of insurance provided, but is a one-sided proceeding, in which only one party is represented; and if there were no other reasons to be assigned in support of the judgment of the court, this fact would be quite sufficient to sustain his conclusion that the award was improperly made.

In addition to this, it appears that the award was made by the umpire in gross. It is not pretended that the articles were gone over in detail, or that there was any discussion of the value of the goods burned out of sight or of those partially destroyed. While it is doubtless true that in making an appraisement it is not contemplated that evidence will be taken by the appraisers, yet it is required that they consider the value of the goods destroyed in detail, and are authorized to hear statements and explanations respecting the goods and their value. The fact that the umpire or the appraisers have more or less information respecting the value of the goods, does not change the right of the insured to have the value of the property destroyed considered in detail, or deprive the insured of the right to be heard upon such subject, either by himself or through his appraiser. (*Kaiser* v. *Hamburg-Bremen Fire Ins. Co.*, 59 App. Div. 525.) In the event of disagreement by the appraisers, the umpire is bound to consider their differences and the

appraisement of each in arriving at a conclusion, considering in detail the value of the goods destroyed rather than in gross. (*Strome* v. *London Assurance Corp.*, 20 App. Div. 571; affd. on appeal, 162 N. Y. 627.) It is, therefore, evident that the finding of the court that there was misconduct upon the part of the umpire and the appraisers is abundantly supported by the testimony. The proof is also sufficient to establish that the plaintiff sustained loss in the sum for which judgment has been awarded. By the terms of the policy the loss was payable sixty days after proof of loss was made. For all practical purposes the evidence disclosed by the record shows a total loss of the plaintiff's property. Its value was in excess of the sum for which the plaintiff was insured. An honest appraisement would have at once disclosed this fact; consequently the defendant became obligated to pay at the expiration of the sixty days the sum secured to be paid by the policy. Such sum was demanded and payment was refused. It was said by Judge EARL in *White* v. *Miller* (78 N. Y. 393) : " Where an account for services, or for goods sold and delivered, which has become due and is payable in money, although not strictly liquidated, is presented to the debtor and payment demanded, the debtor is put in default and interest is set running; and that, if not demanded before, the commencement of suit is a sufficient demand to set the interest running from that date." This language is quoted with approval in *Sweeny* v. *City of New York* (173 N. Y. 414). In *Hastings* v. *Westchester Fire Ins. Co.* (73 id. 141) it was said : " The question of interest was properly disposed of. According to the terms of the policy, the loss was payable sixty days after due notice and proofs furnished of the same. The interest, therefore, became due from that time." As the extent of the amount which the defendant was required to pay was easily ascertainable, it must so far be regarded as a liquidated sum that upon demand of payment, when payable, interest was set running.

It follows that the judgment should be modified by awarding to the plaintiff interest upon the sum recovered from sixty days after proofs of loss were given, and as modified the judgment should be affirmed, with costs to the plaintiff. .

VAN BRUNT, P. J., PATTERSON and INGRAHAM, JJ., concurred.

O'Brien, J. (dissenting):

The claim in its nature was unliquidated and I think the Special Term was right in refusing to give to plaintiff interest. I think, therefore, the judgment in all respects should be affirmed.

Judgment modified as directed in opinion, and as modified affirmed, with costs to the plaintiffs.