ÆTNA INS. CO. v. HEFFERLIN.

(Circuit Court of Appeals, Ninth Circuit. October 14, 1919.)

No. 3317.

1. INSURANCE ⬦574(1)—EVERY INTENDMENT IN FAVOR OF VALIDITY OF AWARD.
   Every intendment will be entertained in favor of an award made by appraisers appointed pursuant to arbitration provisions in a fire policy, and the award will be sustained, even though it does not conform to what would have been the judgment of the court.

2. INSURANCE ⬦574(1)—AWARD BY ARBITRATORS AFFIRMED.
   An award by appraisers appointed pursuant to the provisions of a fire policy will not be sustained, where the appraisers omitted items of damage and failed to accept insured's tentative offer of information, and did not notify him as to the date of the hearing.

3. INSURANCE ⬦575—INSURED NOT REQUIRED TO SUBMIT TO SECOND APPRAISEMENT.
   Where, through no fault of the insured, an award made by appraisers appointed under the arbitration provisions of a fire policy is set aside for their failure to consider all of the items of loss, etc., insured is not required to submit to a second appraisement of the loss.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Action by C. S. Hefferlin against the Ætna Insurance Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

This action was brought in the state court by Hefferlin, called plaintiff, against the insurance company, called defendant. to enforce liability under an insurance policy for $5,000, issued to cover a hotel, including foundations, window screens, doors, electric light wiring, and all fixtures. The building was almost wholly consumed by fire on November 30, 1916. The case was removed to the United States court.

In one count plaintiff alleges that his loss was $64,695, the value of the property when destroyed, that proofs of loss were made, that there was other insurance, and that the loss had not been paid. In the second count

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

it is alleged that plaintiff and defendant disagreed as to the amount of loss, and that according to the terms of the policy they thereupon attempted to have the amount of loss sustained ascertained by appraisers, one selected by plaintiff and the other by defendant; that the appraisers visited the burned building during a severe storm, when snow and storm conditions prevented an ascertainment of what, if any, salvage value there was; that the appraisers arbitrarily fixed the salvage value at $3,038.50, whereas there was in fact no salvage value; that the appraisers refused to permit plaintiff to furnish information as to the construction and condition of repair of the building at the time of the fire, or to furnish evidence with respect thereto, and that the appraisers, being ignorant of the condition and preservation of the building, arbitrarily fixed the sound value at the time of the fire at $50,601.80, depreciation at $12,842, whereas actual depreciation did not exceed $5,000, and the net loss at $34,721.21, whereas the actual cash value at the time of the fire was $64,695. It is alleged that the appraisers failed to give notice of the time when or place where they were to meet to make their findings, and that they failed to take into consideration room telephones and wiring, door and window screens, down spouts, and gutters. The insurance company answered that, because of disagreement as to the amount of loss and damage sustained, appraisers were appointed, and that the sound value, amount of salvage, and depreciation and net loss were as fixed by the appraisers. The company pleaded willingness to pay its proportionate amount of the award, and that if there was any omission of items it was because of the acts of the plaintiff, and that it was the duty of the plaintiff to submit to a new appraisal, consent to which was given by the company.

The jury rendered a general verdict, and made special findings in favor of plaintiff. They found that the cost of the building and fixtures in 1909 was $59,939, that when burned it would have cost $68,929.85, that the amount of depreciation was $7,222.75, and that the amount of salvage was $1,250. Under the findings, the company became liable to pay the plaintiff the amount stipulated in the policy upon which the action was based. Judgment was entered accordingly.

The policy, after providing that loss or damage shall be ascertained or estimated according to actual cash value, with proper deductions for depreciation, however caused, shall in no event exceed what it would then cost the insured to repair or replace with material of like kind and quality, reads: "* * * Said ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers as hereinafter provided, and the amount of loss or damage having been thus determined, the sum for which this company is liable, pursuant to this policy, shall be payable 60 days after due notice, ascertainment, estimate, and satisfactory proof of loss have been received by this company in accordance with the terms of this policy." The policy also contains the following: "In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expenses of the appraisal and umpire."

Frank & Gaines, of Butte, Mont., for plaintiff in error.

Smith, Gibson & Smith, of Livingston, Mont., and E. N. Harwood, of Billings, Mont., for defendant in error.

Before ROSS, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The errors assigned present the question whether the court erred in declaring as a matter of law that the award was invalid, and should it be

held that the appraisal was ineffective, whether it was obligatory upon the plaintiff, the insured, to submit to a new appraisal.

The evidence was that neither of the appraisers was acquainted with the hotel building prior to the time of its destruction; that the building and fixtures were almost entirely destroyed; that the foundations were shattered and the stone in them discolored; that the kitchen part of the hotel was entirely burned off, the upper walls caved in, and the floor sagged. Plaintiff testified that, when the appraisers started to go from Livingston to Corwin, where the hotel was situated, he asked one of them if he wished him to accompany them, and that the appraiser said he didn't care, and "guessed" it would be all right if he went; that at the time the appraisers examined the premises the ground was covered with snow, and the wind was blowing, and the temperature very cold; that the appraisers did not seem to give him much attention, and that, not being very strong himself, he left them and went to the depot; that the appraisers never asked him for anything, although he offered to give them any information he could; that they did not tell him they would give him an opportunity to give them information, nor did they make any inquiry of him about the condition of the hotel, nor invite information about the property; that when they came down from the hotel to Livingston they asked no questions. He said:

"They did not seem to want me to give them any information. I judged that from their demeanor."

He further testified that he could have given them information, and would have done so; that they brought to him the award, and that he told them it was too low, and that he was dissatisfied; that they did not include the down spouting and extras of the value of $300, nor the entire wiring of 80 inside rooms, telephone switchboard, or enunciator, which cost about $1,480, nor the screen doors and window screens on the entire building, worth $490.62. On cross-examination, plaintiff testified that he had a set of plans and specifications which had been used during the construction of the building, and that he furnished these to the insurance adjuster, who took them away with him, and that he had secured a duplicate set, which he turned over to an architect; that when he was going up to the hotel site he told one of the appraisers that he would tell him anything he wanted to know about, and that he told both the appraisers the same thing when he was at the hotel building site; that one of the appraisers said, "All right," they would call on him if they wanted anything; that he was a little offended at the demeanor of the appraisers, and thought they ought to ask him questions about the property, but they did not. Plaintiff also said that he had had the floors painted and inside varnishing done; that the building did not require much repair and was in very good condition.

The architect, who had furnished the plans and specifications for the building and supervised its construction, testified that the original cost of the hotel in 1910 was approximately $58,000, and that it would cost from 15 to 20 per cent. more to construct in 1916, and that in his opinion a fair depreciation would be 2 per cent. per annum. Another architect testified that in his opinion the cost of construction in 1916 would be about $65,000, and that the depreciation from 1910 to 1916

would not exceed 10 per cent.; that in June, 1918, after the fire, there was very little salvage, the foundation walls being badly shattered, and that not more than 25 per cent. of the stone was fit for use again.

One of the appraisers, in testifying for the defendant, said that in estimating depreciation he was guided largely by rules adopted by engineers, covering classes of material, and that these rules are determined by long experience and observation in different classes of materials; that he obtained plans and specifications of the building, and consulted at different times with the architect who drew the plans of the hotel, and from the information obtained from the architect and the plans and specifications the appraisers could estimate the cost of the building, with the exception of the electric light fixtures, and that he wrote to plaintiff to procure the invoice for those; that plaintiff did not furnish the figures for the electric light fixtures, and they got them from others; that the plaintiff had offered his services, but that the appraisers had obtained all the information from the specifications and plans that was required as to the building and would get the information with reference to the salvage and as to the condition of the ruins when they were upon the ground; that the ruins would speak for themselves, and that it was "up to us to decide without any outside interference"; that they examined the ruins, estimated how much was destroyed, and eliminated that, and allowed for what could be utilized; that they went all over the ruins, observed what was left of the interior finish, considered wear and tear, and estimated upon the outside walls by what they found still standing; that they estimated depreciation at not quite 4½ per cent. per annum. This appraiser frankly said: The "idea" was "that Mr. Hefferlin should have furnished all the information without solicitation"; that they got some information in Livingston, but that it was not the custom to get the information from the interested parties, unless the appraisers asked for it; that the plans did not inform them that there was a telephone system, window screens, and screen doors; and that the appraisers did not consider those items in making their estimate. The other appraiser testified generally to like effect concerning depreciation, and said that in the papers furnished there was nothing about room telephones or an enunciator; that they took an average of all depreciation, and proceeded upon the belief that the plans and specifications embodied everything there was in the building. Witness testified that on the way up to Corwin he did not hear plaintiff say anything about the appraisal matter, and did not talk with him about it.

[1, 2] It is well established that every reasonable intendment is in favor of an award made by appraisers who have acted pursuant to the terms of the clause of a policy such as there is in this case, and that an award will be sustained, even though it does not conform to what would have been the judgment of the court. But in the present case these points stand forth in a conspicuous way: The appraisers never received any explanations or statements of any character with relation to the property destroyed from the insured, and they omitted to consider important items of property that should have been included. In some respects the case is like that of Continental Insurance Co. v. Gar-

rett, 125 Fed. 589, 60 C. C. A. 395. The policy in that case provided for submission to appraisers, and that the appraisers should ascertain the sound value of and the loss upon the property damaged or destroyed. Award was made and subsequently action brought to set it aside, because of want of notice to the insured. There was no requirement in the agreement of submission that the appraisers should follow the law generally, but the Court of Appeals, speaking through Judge Lurton, held that notice should have been given to the parties of the time and place of the hearing "from the commonest principles of justice." The court was of the opinion that, if the character of the matter submitted were such as to justify an inference that the appraisers were chosen to act as experts and adjust the matter from their own knowledge, notice would not be necessary, and it was not obligatory upon the appraisers to hear evidence, unless the agreement of submission so provided. The arbitrators in that case were called upon to ascertain and appraise the sound value of a brick building which had been almost completely destroyed by fire; even the walls having, in part, fallen. The court said:

"Thus a mere examination of the premises could not, on the evidence in this record, have informed them as to the character of the finishing of the interior work, and its condition before the fire. The appraisers were experienced contracting builders; but, without some evidence, how was it possible for them to know the sound value or the loss and damage? Under such circumstances appraisers should give notice to both parties of the time and place of hearing. and require evidence in respect of facts which they could not otherwise know. The mere fact that the assured saw the appraisers on the street, and that he did not ask to be heard or object to their proceeding without notice, is not a waiver. The appraisers were not in session when complainant saw them, and he was not present when they examined the ruins or acted in any way in the discharge of their duty, and he had no notice of either the time or place of their session."

This case has been approved by the Supreme Court of Montana in Carlston v. St. Paul Fire & Marine Ins. Co., 37 Mont. 118, 94 Pac. 756, 127 Am. St. Rep. 715. Although in that case there was a more emphatic demand for a hearing than was made by the plaintiff in the present case, yet in view of the offer of the plaintiff to the appraisers that he would be glad to furnish them any information respecting the property, it is not unreasonable to say that his position is hardly less favorable than it would have been if he had made more formal request. They should have heard him. The omission to include the items of electric wiring, screen doors, and window screens shows that, notwithstanding the fact that the appraisers were experienced contractors, without evidence of the fact that these things were in the hotel at the time of the fire, it was next to impossible for them to determine accurately the sound value or the loss and damage. Canfield v. Watertown Fire Ins. Co., 55 Wis. 419, 13 N. W. 252; Rutter & Hendrix v. Hanover Fire Ins. Co., 138 Ala. 202, 35 South. 33; Phœnix v. Moore (Tex. Civ. App.) 46 S. W. 1131.

There is no suspicion of lack of good faith or of integrity of conduct on the part of the appraisers. We gather from the record that they acted in the best of faith and in a conscientious effort to perform their duty properly; but in their efforts to be impartial they failed to

acquire necessary information that they could have obtained by hearing the plaintiff. The insured evidently thought that it would be inappropriate for him to obtrude evidence upon the appraisers unless they requested it. The result, however, has operated unjustly to the insured, because the appraisers did not have before them sufficient information upon which to found accurate conclusions as to the pecuniary estimate of damage done to the property burned. We therefore think that, under the undisputed facts, the lower court was correct in holding the award ineffective, and that plaintiff could set it aside by action in court. As bearing upon the question we cite Ætna Ins. Co. v. Jester, 37 Okl. 413, 132 Pac. 130, 47 L. R. A. (N. S.) 1191; Phœnix Ins. Co. v. Moore, supra; Schoenich v. American Ins. Co., 109 Minn. 388, 124 N. W. 5; Palatine Ins. Co. v. O'Brien, 152 Fed. 922, 82 C. C. A. 70; Kaiser v. Hamburg Bremen Ins. Co., 59 App. Div. 525, 69 N. Y. Supp. 344; Canfield v. Watertown Fire Ins. Co., supra.

[3] Nor do we think that it was the duty of the assured to submit to a second appraisement of the loss. Having once, in good faith, undertaken to have an estimate of the amount of his loss made by appraisers appointed pursuant to the terms of the policy, and the appraisement having been defective and invalid, without fault on the part of the insured, he is not obliged to join in an attempt to have another appraisement, but may maintain this action. Uhrig v. Williamsburgh Fire Ins. Co., 101 N. Y. 362, 4 N. E. 745; Western Assurance Co. v. Decker, 98 Fed. 381, 39 C. C. A. 383; Solem v. Conn. Fire Ins. Co., 41 Mont. 351, 109 Pac. 432.

Believing that the rights of the insuring company have not been prejudiced, the judgment of the lower court is affirmed.

Affirmed.