ETHEL GERVANT, Respondent, *v.* NEW ENGLAND FIRE INSURANCE Co., Appellant.

Argued January 20, 1954; decided March 11, 1954.

*Samuel Shapiro* and *Frederick T. Case* for appellant. I. It is conclusively established that there was no fraud, or other misconduct, on the part of the appraisers or the umpire. II. The rule restricting judicial review in arbitration proceedings is equally applicable to appraisal proceedings. (*Cohen* v. *Atlas Assur. Co.*, 163 App. Div. 381; *Fleming* v. *Phoenix Assur. Co.*, 75 Hun 530; *Remington Paper Co.* v. *London Assur. Corp.*, 12 App. Div. 218.) III. In any event, the court may not review evidence on which cash value and loss were computed. IV. In any event market value was considered and it is not material that this does not show in the award. (*McAnarney* v. *Newark Fire Ins. Co.*, 247 N. Y. 176.) V. The award properly considered depreciation in fixing amount of loss. VI. If it be held that the award was properly set aside, there must be a new appraisal under the policy. (*Silver* v. *Western Assur. Co.*, 164 N. Y. 381; *Uhrig* v. *Williamsburgh City Fire Ins. Co.*, 101 N. Y. 362; *Davenport* v. *Long Is. Ins. Co.*, 10 Daly 535.)

*Arthur Karger* for respondent. I. The award was properly set aside by the Appellate Division because of the refusal of the umpire and defendant's appraiser to consider pertinent evidence presented by plaintiff's appraiser, bearing on the " actual cash value " of the premises, in addition to evidence of replacement cost and depreciation. (*McAnarney* v. *Newark Fire Ins. Co.*, 247 N. Y. 176; *Sebring* v. *Firemen's Ins. Co. of Newark, N. J.*, 227 App. Div. 103; *Strome* v. *London Assur. Corp.*, 20 App. Div. 571, 162 N. Y. 627; *Kaiser* v. *Hamburg-Bremen Fire Ins. Co.*, 59 App. Div. 525, 172 N. Y. 663; *Van Cortlandt* v. *Underhill*, 17 Johns. 405; *Halstead* v. *Seaman*, 82 N. Y. 27; *Matter of Rosenberg [Wolfe]*, 180 Misc. 500; *People ex rel. Parklin Operating Corp.* v. *Miller*, 287 N. Y. 126; *New York Mut. Sav. Assn.* v. *Manchester Fire Assur. Co.*, 94 App. Div. 104.) II. In any event the umpire and defendant's appraiser exceeded their powers in deducting 20% from the undisputed amount of plaintiff's damage. III. The Appellate Division properly set aside the appraisal award, without ordering any further appraisal proceedings. (*Aetna Ins. Co.* v. *Hefferlin*, 260 F. 695; *Bishop* v. *Agricultural Ins. Co.*, 130 N. Y. 488; *Uhrig* v. *Williamsburgh City Fire Ins. Co.*, 101 N. Y. 362.)

CONWAY, J. Plaintiff was the owner of premises at 231 Ellery Street in Brooklyn, New York, which were insured by the defendant against loss or damage by fire for an amount not exceeding $6,000. On January 18, 1951, while the policy was in full force and effect, the premises were partially destroyed by fire.

Plaintiff and defendant were unable to agree as to the actual cash value of the property at the time of the loss or the amount of the loss and, pursuant to the provisions for an appraisal contained in the policy, plaintiff and defendant each designated one appraiser. Thereafter, a third individual was appointed as an umpire by a Justice of the Supreme Court. An appraisal award was made on July 20, 1951, and was signed by the umpire and the insurance company's appointed appraiser but not by the plaintiff's. The award merely set forth the determination of the actual cash value of the property as $15,000, and the amount of loss as $4,960, without any further itemization.

The policy contained the New York Standard 80% Average Clause which provided that defendant was not to be liable for

a greater proportion of any loss or damage to the property than the $6,000 bore to 80% of the " actual cash value of said property at the time such loss shall happen ".

Accordingly, on the basis of the figures contained in the appraisal award, the defendant would be liable for $2,480, computed as follows:

$$\frac{\$6,000 \text{ (Amount of Insurance)}}{\$12,000 \text{ (80\% of \$15,000, the appraised '' actual cash value '' of the building)}} \text{ of } \$4,960 \text{ (appraised amount of loss)} \text{ equals } \$2,480.$$

Plaintiff brought this action in the Supreme Court, Kings County, seeking a judgment in equity setting aside the award alleging various acts of misconduct on the part of the umpire; that the appraisal award " was grossly inadequate, unfair and improper, and was the result of a corrupt understanding between the umpire and the company's appraiser " and that the umpire was neither " competent " nor " disinterested " as required by the policy.

The principal issue raised by plaintiff at the trial was that the umpire and the appraiser selected by the insurance company were guilty of *misconduct, in a legal sense,* in that they only considered evidence of replacement cost less depreciation in making the award and flatly refused to consider other pertinent evidence presented by plaintiff's appointed appraiser bearing on the " actual cash value " of the premises.

Plaintiff testified that she had a conversation with the umpire before he made the award and that he said " he was going to consider replacement value only, less depreciation ", and " under no circumstances " would he " consider the law on the subject."

The appraiser designated by plaintiff testified that he valued the entire property, including both the land and the building, at between $6,000 and $7,000 and he so informed the umpire and the company's appraiser. He said he requested them to consider the " real estate price, the price of real estate " and the " market value ", but that they said they would consider only the replacement cost.

The company's appointed appraiser testified at his examination before trial, which was introduced into evidence in lieu of his appearance and testimony, that the two appraisers and the umpire agreed " that $6,200 represented a fair amount to effect the repairs necessary as a result of the fire "; that plaintiff's appraiser determined the value of the premises prior to the fire to be $7,211.67; that plaintiff's appraiser had considered various factors, including (a) the original cost of the premises and repairs, less depreciation, (b) the rental income of the premises, and (c) replacement cost less depreciation. When questioned concerning his own determination of the " actual cash value ", the company's appraiser answered: " Well, I do not know what you mean by the actual cash value." On being asked whether he had decided on " some value " for the building, he replied: " We decided on two values. * * * Replacement value and the insurable value." He considered the " replacement value " to be the " replacement cost " at a certain amount per cubic foot, and the " insurable value " to be the replacement cost less depreciation. He admitted he made no inquiry as to the age of the building or its original cost of construction; that he gave no " consideration at all to the then market value of the building as it might have been prior to the fire "; that he made no inquiry " as to what the rentals in that building had been prior to the fire "; that the umpire did not ask him to consider " market value " in determining the value of the premises and that he could not recall any discussion with the umpire concerning the use of " market value ", but he thought that plaintiff's appraiser had " brought the subject up."

The umpire testified that the figure of $15,000 fixed as the actual cash value was " based solely on the replacement cost plus the depreciation factor ", and that plaintiff might have called his attention to the fact that the market value was only approximately $7,000 but that she said a lot of things to which he paid no attention. He further stated that he and the company's appointed appraiser determined the value of the premises prior to the fire by fixing a replacement value of $25,000 on the basis of the number of cubic feet in the premises and that by depreciating the replacement cost by 40% they arrived at the figure of $15,000. He did not inquire as to the original cost of

the building, and he could not recollect whether plaintiff's appraiser had advised him that "market value" should be considered as a factor in determining the "actual cash value" of the building.

Thus it is plain that this record amply supports the finding of the Appellate Division that the amount of the award was reached by hearing and receiving evidence of the reproduction cost less depreciation only to the intentional exclusion of all other pertinent factors of value.

The Appellate Division was also correct in concluding, in view of our decision in *McAnarney* v. *Newark Fire Ins. Co.* (247 N. Y. 176) that the "actual cash value" of premises under a standard fire insurance policy in this State cannot be arrived at by receiving evidence of replacement cost less depreciation only. Rather, the trier of fact should listen to all pertinent evidence on the subject. The insurer in that case had agreed to insure to the "extent of the actual cash value". We interpreted that phrase to mean actual value expressed in terms of money and said (pp. 183–184): "We do not agree * * * that, under the standard clause, the sole measure of damage was cost of reproduction less physical depreciation * * *. This provision, while it doubtless comprehends cost of reproduction, does not restrict the field of investigation to such cost or provide that, with depreciation, it shall constitute an exclusive measure of recovery." We went on to point out (p. 184): "Where insured buildings have been destroyed, the trier of fact may, and should, call to its aid, in order to effectuate complete indemnity, every fact and circumstance which would logically tend to the formation of a correct estimate of the loss. It may consider original cost and cost of reproduction; the opinions upon value given by qualified witnesses; the declarations against interest which may have been made by the assured; the gainful uses to which the buildings might have been put; as well as any other fact reasonably tending to throw light upon the subject. [Authorities cited.]"

Defendant maintains that the Appellate Division should not have set aside the award since the Official Referee found that there was no evidence of "fraud" or "misconduct" on the

part of the umpire or the company's appraiser and the Appellate Division did not disturb that finding. The argument is made that the rule restricting judicial review of errors of fact or law in arbitration proceedings is equally applicable to appraisal proceedings.

The Appellate Division apparently found it unnecessary to pass on the issue of fraud or active misconduct, or corruption since it based its reversal on the *failure of the umpire and the company's appraiser to hear and receive* evidence as to factors other than reproduction cost less depreciation. It is also to be noted that the Referee made no specific finding on the issues of whether the umpire was " disinterested " or " competent ", as required by the policy, and the Appellate Division likewise made no findings on those issues.

Nevertheless, it is our opinion that the ground on which the Appellate Division reversed the Referee is sound. Here the umpire and the company's appraiser arbitrarily refused to admit evidence of the variety of facts which enter into the determination of " actual cash value " despite the fact that evidence of such factors was directly presented to them by plaintiff's appraiser. They flatly refused to take any evidence into account other than that relating to reproduction cost less depreciation. This does not present a situation, as defendant contends, where the Appellate Division has undertaken to review the merits of the appraisal. It is manifest that the Appellate Division based its determination on the rule that an umpire and one appraiser *are not free to disregard, arbitrarily,* pertinent evidence presented by the other appraiser, and that a *flat refusal* on their part to hear such evidence is condemned by authorities in this State as legal misconduct for which the award will be set aside. (*Strome* v. *London Assur. Corp.,* 20 App. Div. 571, affd. 162 N. Y. 627; *Kaiser* v. *Hamburg-Bremen Fire Ins. Co.,* 59 App. Div. 525, affd. 172 N. Y. 663.) The difference between the contentions of the parties and the cases cited by them in support thereof, is the difference between reviewing findings of fact and conclusions of law made by an umpire and appraisers which were based on a consideration of the evidence presented and the arbitrary refusal of the fact

finders to hear such evidence. The right of a party to have appraisers receive all pertinent evidence offered is a fundamental procedural right to which plaintiff was entitled, and its denial by the umpire and the company's appointed appraiser has been characterized as " misconduct, in a legal sense " which is sufficient under the above authorities to set aside the award in equity. (*Strome* v. *London Assur. Corp., supra,* p. 573.)

Even in arbitration proceedings the rule is that " If the arbitrators refuse to hear evidence pertinent and material to the matter in controversy, it is unquestionably such misconduct as will vitiate an award in a court of equity." (*Van Cortlandt* v. *Underhill,* 17 Johns. 405, 410; *Halstead* v. *Seaman,* 82 N. Y. 27, 30–31; *Matter of Rosenberg* [*Wolfe*], 180 Misc. 500, 504.)

Defendant's final contention is that if the award was properly set aside, the Appellate Division should have directed a new appraisal under the policy and should not have left the plaintiff free to pursue her normal remedy of an action at law on the policy. However, after an appraisal proceeding has terminated in an award and the award has been set aside, without any fault on the part of the insured, he need not submit to any further appraisement but may sue on the policy. (See *Strome* v. *London Assur. Corp.,* 20 App. Div. 571, affd. 162 N. Y. 627, *supra.*) Thus, as was said in *Aetna Ins. Co.* v. *Hefferlin* (260 F. 695, 700) : " Having once, in good faith, undertaken to have an estimate of the amount of his loss made by appraisers appointed pursuant to the terms of the policy, and the appraisement having been defective and invalid, without fault on the part of the insured, he is not obliged to join in an attempt to have another appraisement, but may maintain this action [on the policy]."

The judgment appealed from should be affirmed, with costs.

LEWIS, Ch. J., DESMOND, DYE, FROESSEL and VAN VOORHIS, JJ., concur; FULD, J., taking no part.

Judgment affirmed.