### J. E. DAVIS MFG. CO. v. FIREMEN'S FUND INS. CO. et al.

(District Court, N. D. New York.  February 5, 1914.)

1. INSURANCE (§ 572*)—FIRE LOSS—ADJUSTMENT—PROCEEDINGS BEFORE APPRAISERS.

While a proceeding by appraisers and an umpire to adjust a fire insurance loss need not be conducted with the formalities of a trial in a court of law or equity, there must, nevertheless, be a fair effort on the part of the appraisers and umpire to ascertain the truth, and a consideration of available evidence and information, and a deliberate judgment of those making the award after due consultation and deliberation.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1422, 1423, 1427, 1429; Dec. Dig. § 572.*]

2. INSURANCE (§ 574*) — ADJUSTMENT OF LOSS — APPRAISERS — DUTY OF APPRAISER.

Appraisers as well as an umpire appointed to determine an insurance loss should not only be competent but fair and unprejudiced as between the parties to the award, and a refusal or willful neglect of an appraiser or umpire to listen to and consider material sworn statements presented is evidence of bias and interest.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1430–1432, 1434; Dec. Dig. § 574.*]

3. INSURANCE (§ 572*)—DETERMINATION OF LOSS—APPRAISAL.

Where appraisers and an umpire are appointed to determine an insurance loss, it is the duty of the appraisers to consult, and, if they cannot agree, to call in the umpire, whose function is to deliberate with them; it being improper for one or two to consider evidence not submitted to the other or others.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1422, 1423, 1427, 1429; Dec. Dig. § 572.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. INSURANCE (§ 574*)—LOSS—ADJUSTMENT—APPRAISAL—INVALIDITY.

Where the appraisers and an umpire appointed by an insurance company to adjust a loss were not impartial and signed an award for an amount much less than the actual loss, after having refused to consider relevant evidence on such subject, the award would be set aside for fraud.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1430–1432, 1434; Dec. Dig. § 574.*]

In Equity. Suit by the J. E. Davis Manufacturing Company against the Firemen's Fund Insurance Company and others to set aside and declare void a certain award of appraisers in proceedings to adjust a fire insurance loss. Decree for complainant.

Davis & Lusk, of Cortland, N. Y., for complainant.

White, Cheney, Shinaman & O'Neill, of Syracuse, N. Y., for defendant Firemen's Fund Ins. Co.

RAY, District Judge. The salient facts may be stated as follows:

1. "That the plaintiff, J. E. Davis Manufacturing Company, is a business corporation duly organized and existing under the laws of the state of New York, having its office and principal place of business in the city of Cortland, state of New York, and is a citizen and resides within said state of New York and within the judicial district of the United States known as the Northern district of New York."

2. "That the defendant Firemen's Fund Insurance Company is a corporation duly organized and existing under the laws of the state of California, having its principal place of business at San Francisco in said state, and at all the times mentioned in the bill of equity herein and at the time of the commencement of this suit was a resident and citizen of the state of California and at all times in said bill mentioned, and at the time of the commencement of this suit, was doing business within the state of New York, having duly complied with all of the requirements of the law of said state relative to the transaction of business therein, and was at all times in said bill mentioned, and at the time of the commencement of this suit, authorized to do business within the state of New York."

3. "That the defendant the First National Bank of Cortland is a corporation duly organized and existing under the laws of the United States, and having its principal place of business in the city of Cortland in the state of New York, and at the time of the commencement of this suit was a citizen of and resided in said state of New York, and within the judicial district of the United States known as the Northern district of New York. That the defendant the National Bank of Cortland is a corporation duly organized and existing under the laws of the United States, having its principal place of business at the city of Cortland in the state of New York, and was at the time of the commencement of this suit a citizen of and resided in said state of New York, and within the judicial district of the United States known as the Northern district of New York. That the defendant Grace L. Mix, at the time of the commencement of this suit, was a citizen of the state of New York and resided in the city of Cortland in said state and within the judicial district of the United States known as the Northern district of New York. That the defendant John A. Wavle was at the time of the commencement of this suit a citizen of the state of New York and resided in the city of Cortland in said state, and within the judicial district of the United States known as the Northern district of New York. That the defendant Linus W. Peck, at the time of the commencement of this suit, was a citizen of the state of New York and resided in the city of Cortland in said state and within the judicial district of the United States known as the Northern district of New York. That the defendant Frank Begent was, at the time of the commencement of this suit, a citizen of the state of New York, and resided in the village of Groton

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in said state and within the judicial district of the United States known as the Northern district of New York. That the defendants herein the First National Bank of Cortland, the National Bank of Cortland, Grace L. Mix, John A. Wavle, Linus W. Peck, and Frank Begent are each jointly interested with the plaintiff in the maintenance of this suit. That upon bringing this suit the plaintiff duly requested each of the said defendants to join as coplaintiffs herein, and that each of said defendants refused so to do. and that the consent of none of the said defendants could be obtained to appear as plaintiffs in this suit."

4. The matter in suit, exclusive of interest and costs, exceeds the sum of $3,000.

5. "That this suit is brought in aid of and as ancillary to an action at law now pending in this court between this plaintiff and these defendants to recover upon the policy of insurance hereinafter mentioned."

6. "That in and by its certain policy of insurance No. B–228343, duly signed by the president and secretary of said insurance company, and countersigned by the duly authorized agent of said company at the city of Cortland, N. Y., on or about the 15th day of September, 1911, which said policy of insurance was on or about that day delivered to the plaintiff herein by the defendant Firemen's Fund Insurance Company, in consideration of the sum of $68 to it then paid by said J. E. Davis Manufacturing Company, did insure the said J. E. Davis Manufacturing Company against loss or damage by fire to the amount of $8,000 on its property mentioned and described in said policy of insurance. That the said Firemen's Fund Insurance Company in and by said policy of insurance did promise. and agree to pay and make good unto said J. E. Davis Manufacturing Company as coinsurer, under a full coinsurance clause as set forth in said policy of insurance, all such loss or damage not exceeding in amount the said sum of $8,000, as should happen by fire to the property as therein specified, during the term of one year from the 15th day of September, 1911; such loss to be paid within 60 days after notice and satisfactory proof of said loss as in said policy provided."

7. "That on or about the 5th day of April, 1912, and while said contract of insurance was remaining in full force and effect, the buildings, additions, and attachments thereto, a concrete lumber shed, dry kilns, and contents of the same, also the contents of a car situate at the corner of East Court and Pendleton streets in the city of Cortland aforesaid, including office furniture, fixtures, and supplies, being the same property mentioned and described in said policy of insurance, and all the property upon the said premises was destroyed by fire, excepting a small quantity of veneer, some office furniture, and the boilers on said premises. That said fire did not occur from any of the causes excepted in said policy of insurance, and none of said property so destroyed was of the kind for the loss of which said defendant Firemen's Fund Insurance Company was exempted from liability under said policy."

8. "That at the time of said fire and loss, the J. E. Davis Manufacturing Company had, in addition to the said policy of insurance issued by the defendant Firemen's Fund Insurance Company, no other insurance either valid or invalid, nor by solvent or insolvent insurers, excepting 35 certain policies of insurance which were in full force and effect to the amount of $207,750; said policies covering the same property covered by said policy above mentioned and described."

9. "That the defendants the First National Bank of Cortland and the National Bank of Cortland are the owners and holders of bonds, secured by a trust mortgage covering a part of the real property mentioned and described in said policy of insurance. That each of the defendants Grace L. Mix, John A. Wavle, Linus W. Peck, and Frank Begent is the owner and holder of a bond secured by a mortgage covering a part of the real property mentioned and described in said policy of insurance. That under the terms of said policy of insurance issued by said defendant to said J. E. Davis Manufacturing Company loss on real estate was payable to the said defendants, the First National Bank of Cortland, the National Bank of Cortland, Grace L. Mix, John A. Wavle, Linus W. Peck, and Frank Begent, as their respective interest might appear."

10. "That the plaintiff, J. E. Davis Manufacturing Company, was at the time of the issuance of said policy and at the time of said fire and is the owner in fee simple of all of the said real estate in said policy described, and the unconditional and sole owner of all of the real estate and personal property covered by the said policy of insurance, except such personal property as was held by the said J. E. Davis Manufacturing Company in trust or on commission, sold but not delivered, as mentioned and provided in and by said policy of insurance."

11. "That said defendant Firemen's Fund Insurance Company failed to pay such loss, or any part thereof."

12. "That on or about the 18th day of November, 1912, the J. E. Davis Manufacturing Company, the plaintiff in this suit, commenced an action at law in the Supreme Court of the state of New York, in the county of Cortland aforesaid, against the same parties who are defendants in this suit; the purpose of said action being to recover judgment against the Firemen's Fund Insurance Company for the sum of $7,978.32, with interest thereon from the 7th day of July, 1912, then claimed to be due, owing, and payable to this plaintiff from said defendant insurance company. That thereafter, upon motion of the defendant Firemen's Fund Insurance Company, said action was removed from the Supreme Court of the state of New York to the District Court of the United States for the Northern District of New York upon the ground that said action involved a controversy between citizens of different states; the matter in dispute between said parties exceeding, exclusive of interest and costs, the sum of $3,000. That thereafter and on or about the 17th day of January, 1913, the said defendant Firemen's Fund Insurance Company filed its answer in the District Court of the United States for the Northern District of New York. The issues raised thereby are now pending undetermined on the law side in said District Court. That in and by the answer interposed by said defendant Firemen's Fund Insurance Company, in said action at law, so removed from the Supreme Court of the state of New York to the District Court of the United States for the Northern District of New York, the said defendant insurance company set up and pleaded as partial defense thereto that under and pursuant to the terms of said policy an appraisal had been entered into for the purpose of determining the amount of loss sustained by said J. E. Davis Manufacturing Company by reason of said fire, and that under said appraisal an award in writing had been made, fixing the sound value of the property insured on the 5th day of April, 1912, at the sum of $157,474.04, and the actual damage thereto by fire on that day to be the sum of $152,625.05; and the said defendant insurance company further alleged that the proportion of said loss for which said defendant would be liable under said policy, if liable at all, was the sum of $5,659.34, and that in no event could a recovery be had against said defendant by reason of said policy for a greater sum. That under the law, practice, and procedure which was at the time of the beginning of said action at law in the Supreme Court of the state of New York, at the time of the removal thereof to the District Court of the United States for the Northern District of New York, and now is in force and effect in said state of New York, the plaintiff in said action at law so brought upon said policy of insurance might attack, controvert, and set aside the purported award so pleaded by the defendant Firemen's Fund Insurance Company, as a defense thereto, and the Supreme Court of that state in such law action might decree and adjudge, and a jury might find, that the award so pleaded as a defense was in fact invalid, ineffective, fraudulent, and void. That under the law, practice, and procedure which was at the time of the removal of said action at law from the Supreme Court of the state of New York to the District Court of the United States for the Northern District of New York, and still is in force and effect in the District Court of the United States, including the District Court for the Northern District of New York, the plaintiff in said action at law so brought upon said policy of insurance cannot attack, controvert, or set aside the award so pleaded by said defendant insurance company; nor can the District Court in said law action decree or adjudge, nor can a jury find, that the award so pleaded is invalid, ineffective, fraudulent, or void. But the said award is binding and conclusive upon this

plaintiff in said law action until the same shall be canceled or set aside at the suit of this plaintiff in a court of equity."

13. "That after the fire hereinbefore mentioned and referred to, the defendant Firemen's Fund Insurance Company, by its agent duly authorized, notified the plaintiff that it claimed the right under said policy to have the loss or damage to the buildings and machinery destroyed by said fire appraised by appraisers. That the J. E. Davis Manufacturing Company thereupon refused to agree to an appraisal of part only of the property destroyed by said fire, and thereupon demanded that the said Firemen's Fund Insurance Company, under the provisions of said policy, should have the entire loss or damage to such property by said fire appraised by appraisers, and thereafter the said Firemen's Fund Insurance Company, with the other insurance companies having issued insurance policies covering said property, designated one Thomas Fleming as one of the appraisers, and the plaintiff, J. E. Davis Manufacturing Company, designated one Henry Stultz as one of said appraisers, and thereupon an instrument in writing was made and subscribed by the Firemen's Fund Insurance Company by its aforesaid agent and the other insurance companies aforesaid, and this plaintiff, dated the 24th day of June, 1912, which instrument was as follows:

### " 'Agreement for Appraisal.

" 'This agreement by and between J. E. Davis Mfg. Co., of the first part, and the Insurance Company, or Companies, whose names are signed hereto, each for itself and not jointly, of the second part, witnesseth:

" 'That whereas, the party of the first part claims to have sustained a loss by fire occurring on the 5th day of April, 1912, to and upon the following described property, to wit:

### " 'J. E. Davis Manufacturing Co.

" '$...... On brick metal-roofed building, additions and attachments thereto (excluding smokestack, also foundations below level of ground), and on concrete lumber shed, concrete and frame metal-roofed dry kiln, and contents of same. Also contents of trucks or cars, and lumber in yard or streets adjoining, situate corner of East Court and Pendleton streets, Cortland, N. Y. It is understood, and agreed that part of dry kiln is on land owned by the D. L. & W. R. R. Co.

" 'It is understood and agreed that the word contents in this form shall cover office furniture, fixtures and supplies, and all property, its own, or held by them in trust or on commission, sold but not delivered, and this company shall be liable therefor; but the word contents shall not cover any articles excepted in line 38 of the Standard policy of the State of New York.

" 'And whereas, a disagreement has arisen between the parties hereto, as to the amount of such loss, and

" 'Whereas, it is provided by the policy (or policies) of said party (or parties) of the second part, held by said party of the first, that in the event of disagreement as to the amount of loss the same shall, as in said policy (or policies) provided be ascertained by appraisers.

" 'Therefore this agreement witnesseth: That in conformity to the terms and conditions of the policy (or policies) of the party (or parties) of the second part, Henry Stultz and Thomas Fleming have been selected, and are merely appointed appraisers, to estimate and appraise, in accordance with the terms and conditions of said policy (or policies), the sound value of said property and the amount of loss or damage directly caused by said fire to and upon the same.

" 'The said appraisers shall first select a competent and disinterested umpire, as provided by said policy (or policies); the said two appraisers together shall then estimate and appraise the loss in conformity to the conditions of said policy (or policies) stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss. Such loss or damage shall be ascertained or estimated according to the actual cash value of said property at the time of the occurrence of said fire, with proper deduc-

tion for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality, but such appraisement does not in any respect waive any of the provisions or conditions of said policy (or policies) of insurance, or any forfeiture thereof, or the proof of such loss and damage required by the policy (or policies) of insurance thereon.

" 'Witness our hands in duplicate at Cortland, N. Y., this 24th day of June, 1912.

     " 'J. E. Davis Mfg. Co.,
      " 'Per J. E. Davis, Pres.
    " 'Northern Assur. Co. of London; Security Ins. Co. of New Haven; Rhode Island Ins. Co. of Providence; Nationale Fire Ins. Co. of Paris; Globe Under. Agency Globe & Rutgers Ins. Co.; Globe & Rutgers Fire Ins. Co.; Ins. Co. of North America, Philadelphia; Firemen's Ins. Co. of Newark, N. J.; Pittsburg Underwriters of Pittsburg; Delaware Ins. Co. of Philadelphia; Atlas Assurance Co. of England; California Ins. Co. of San Francisco; Firemen's Fund Ins. Co. of San Francisco; City of New York Ins. Co.; Scottish Union & National Ins. Co.; Svea Fire & Life Ins. Co.; Commercial Union Assur. Co.; Michigan Fire & Marine Ins. Co.,
     " 'By Harvey W. Russ, Adjuster for Each.
   " 'North River Fire Ins. Co. of N. Y.; National Ben Franklin Ins. Co.; Stuyvesant Ins. Co. N. Y.,
     " 'By James H. Andrews, Adjuster for Each, per Harvey W. Russ.
   " 'North British & Mercantile Ins. Co.,
     " 'By F. W. Kentner, S/A., per Harvey W. Russ.
   " 'North Western National Ins. Co.,
     " 'By John K. Sharkey, S/A., per Harvey W. Russ.
   " 'Norwich Union Assur. Co. of Eng.,
     " 'By C. F. Gant, S/A., per Harvey W. Russ.
   " 'Mechanics' & Traders' Ins. Co. of N. O.,
     " 'By Clarence Rich, S/A., per Harvey W. Russ.
   " 'Allemania Fire Ins. Co. of Pittsburgh; New Jersey Fire Ins. Co. of N. J.,
     " 'By Geo. Berry, S/A., per Harvey W. Russ.'

"That on the 24th day of June, 1912, the said appraisers at the city of Cortland, N. Y., signed and swore to a declaration of appraisers as follows:

      " 'Declaration of Appraisers.
" 'State of New York, County of Cortland—ss.:

" 'We, the undersigned, do solemnly swear that we will act with strict impartiality in making an appraisement and estimate of the sound value and loss and damage upon the property hereinbefore mentioned, in accordance with the foregoing appointment, and that we will make a true, just and conscientious award of same, according to the best of our knowledge, skill and judgment. We are not related to the assured, either as creditors or otherwise, and are not interested in said property or the insurance thereon.'

"That on said 24th day of June in the city of Cortland, N. Y., the said appraisers did enter into and sign a selection of umpire which read as follows:

      " 'Selection of Umpire.
" 'We, the undersigned, hereby select and appoint David Nicholson of Syracuse, New York, to act as umpire to settle matters of difference that shall exist between us, if any, by reason of and in compliance with the foregoing agreement and appointment.'

"That on the 9th day of July, 1912, at the city of Cortland, N. Y., the said David W. Nicholson, selected as aforesaid, signed and swore to a qualification of umpire as follows:
      " 'Qualification of Umpire.
" 'State of New York, County of Cortland—ss.:

" 'I, the undersigned, hereby accept the appointment of umpire, as provided in the foregoing agreement, and solemnly swear that I will act with strict

impartiality in all matters of difference that shall be submitted to me in connection with this appointment, and I will make a true, just and conscientious award, according to the best of my knowledge, skill and judgment. I am not related to any of the parties to this agreement, nor interested as a creditor or otherwise in said property or insurance.'

"That on the 29th day of August, 1912, at the City of Syracuse, New York, the said Thomas Fleming, appraiser, and the said David W. Nicholson, umpire, signed an award as follows:

" 'Award.

" 'We, the undersigned, pursuant to the within appointment, do hereby certify that we have truly and conscientiously performed the duties assigned us, agreeably to the foregoing stipulations, and have appraised and determined and do hereby award as the sound value of said property on the 5th day of April, 1912, and the actual damage thereto by the fire on that day, the following sums, to wit:

|  | Sound Value | Loss and damage |
|---|---|---|
| 1st item........................ | $157,474.04 | $152,625.05' |

14. "That the plaintiff duly served all notices of loss and all signed and sworn statements and proofs of loss provided for by said policy of insurance, and that the defendant Firemen's Fund Insurance Company waived the service of any additional statements and notice required by said policy of insurance, and that the plaintiff duly complied with all of the requirements of said policy in reference to notices, claims, and proofs of loss, and all conditions precedent to bringing a suit or action on said policy. That more than 191 days elapsed after the delivery and service by the plaintiff upon the defendant Firemen's Fund Insurance Company of the proofs of loss and statement provided for under said policy, and before the commencement of this action, and that twelve months had not elapsed after said fire before the commencement of an action at law upon said policy."

15. The said award of $152,625.05, made and signed by Fleming and Nicholson, is inadequate in a large amount, as the value of said property insured and so destroyed by said fire was greatly and materially in excess of the said amount so fixed by said award.

16. The evidence is quite conclusive and satisfactory, and I must find that the appraiser selected by the defendant Firemen's Fund Insurance Company was not a competent and disinterested appraiser, and that the umpire so selected by the said appraisers was not a competent and a disinterested umpire, and the selection of such umpire was secured and brought about by acts and conduct on the part of said Fleming and one Charles H. Phillips amounting to fraud and was done collusively for the purpose of securing an umpire who was interested and biased in favor of the said insurance companies, and who was, in fact, biased and interested (nor financially interested) in favor of said insurance companies, and that the acts and conduct of said appraiser, Thomas Fleming, throughout the appraisal and proceedings connected therewith and upon the making of the award, indicated and showed a purpose to defraud the plaintiff by purposely and consciously bringing about and securing an appraisal and award grossly inadequate and largely less than the actual and bona fide loss by reason of such fire and which he succeeded in doing. In this the umpire, David Nicholson, was either a willing and a designing party, or so grossly negligent and disregardful of his duty to the parties interested that his conduct amounted and amounts to fraud in its results, and such award so made by said Fleming and Nicholson was in its effect and results a fraud upon the plaintiff, and that such award so made dated August 29, 1912, the award set up and pleaded in the law action before referred to, must be held invalid, ineffective, fraudulent, and void, and not binding on the J. E. Davis Manufacturing Company.

The insurance, in the aggregate, was large, but the business was large and the plant a large one. There was a large stock on hand, and it was and is impossible to arrive at the exact value of such stock.

There was a large amount of raw material, that is, sawed lumber upon which no further labor had been expended, but the greater part was in various stages of manufacture and a large amount was ready for delivery, that is, completed so far as the J. E. Davis Manufacturing Company completed such work. Many, and perhaps most, of the papers of said company were destroyed in the fire and to get at the actual loss, with any reasonable certainty great care on the part of the appraisers and umpire was demanded and was the right of the insured. The situation was such as to demand the careful scrutiny of such appraisers and of the umpire, but it also demanded of them the securing and consideration of the best obtainable evidence. They had no right to assume a fraud or a false or an excessive claim of loss. There was no presumption on the face of the proofs of loss, made out in great detail, that the claim was excessive. They had no right unbiased and unprejudiced, to start in as they did with the assumption and declaration that they did not believe the J. E. Davis Manufacturing Company had sustained the loss claimed; that they did not believe it had, at the time of the fire, the amount of property or stock on hand, set out in the proofs of loss. At least, it was the duty of each of the appraisers and of the umpire to carefully consider the sworn statements and other evidence offered and submitted for their consideration. The defendant insurance company secured the services of an unsworn person who, acting as its agent, prepared a report as to the loss which was based in part on an assumed profit, not based on any proof of fact or facts and which, in fact, was erroneous, and this report contained material errors and was materially misleading and gave values of material and stock on hand and destroyed in the fire at much less than their actual value. This agent of the insurance company acted upon insufficient evidence and ignored information at hand and available, but, nevertheless, the said Fleming, without making investigation as to the accuracy and reliability of such report, and utterly disregarding sworn statements as to the amount and value of such stock and material, accepted and acted upon such report. The evidence is convincing that Fleming without evidence assumed from the very beginning that the proofs of loss and claims of the insured were grossly exaggerated and fraudulent and adhered to that assumption, declining to examine into the facts and make an honest effort to ascertain the truth. This report of the agent of the insurance company was not furnished to the appraiser appointed and named by the plaintiff, J. E. Davis Manufacturing Company, for his information and consideration, and was not examined or considered by him. The result was, as to this, that Fleming and Nicholson, Nicholson making no examination or investigation as to the accuracy of such statement made by such agent of the defendant, acted on erroneous information and rejected and refused to consider sworn information offered.

The evidence also discloses that certain material evidence furnished by the plaintiff through its appraiser, Stultz, as to buildings and plumbing and its amount and value was not seen or examined by said Fleming. The evidence shows that these appraisers did not at any time

consider in detail the quantity and value of the property destroyed by the fire, and insured, but, on the other hand, attempted to fix a value in gross without going over the items and attempting to arrive at a fair and just estimate of their quantities and values. The appraisers and umpire did not go over the lists and statements of the property destroyed, furnished, or one of their own, together, and together never considered in any detail the quantity or value of the property destroyed, and the appraisers with the umpire never went over the lists of such property destroyed by said fire for the purpose of attempting to arrive at an award which should be the result of the joint action and deliberations of either such appraisers or of said appraisers and said umpire. At best, the result arrived at by one appraiser and the umpire was arbitrary, and biased and based on unwarranted assumptions and inaccurate and biased information accompanied by a refusal to examine and consider the sworn evidence offered and consult and deliberate together.

[1] It is true that such a proceeding by appraisers and an umpire does not demand the formalities of a trial in a court of law or in equity, but it does demand a fair effort to ascertain the truth and a consideration of available evidence and information and the deliberate judgment of the ones making the award after due consultation and deliberation.

[2] I take it that the appraisers as well as the umpire should be not only competent, but fair and unprejudiced as between the parties to the award and the determination of whose interests are confided to them. In the language of the policy of insurance, the appraiser is to be "disinterested," and this means "fair and unprejudiced." Bradshaw v. Insurance Co., 137 N. Y. 137, 32 N. E. 1055. It is the duty of the appraiser, undoubtedly, to bring out all the facts favorable to the party nominating him; but he is not the agent of the party so naming him. A refusal or willful neglect of the appraiser or umpire to listen to and consider material sworn statements presented is evidence of prejudice, bias, and interest. Kaiser v. Hamburg-Bremen Fire Ins. Co., 59 App. Div. 525, 69 N. Y. Supp. 344, affirmed 172 N. Y. 663, 65 N. E. 1118.

[3] And it was the duty of these appraisers to consult together, and, if they did not agree, to call in the umpire whose function it was to deliberate with them. It was improper for one or two to consider evidence or information not submitted to the other or the others. New York Mut. Sav. Ass'n v. Manchester Assur. Co., 94 App. Div. 104, 87 N. Y. Supp. 1075, where it is said:

"The scheme of appraisal contemplates that the two appraisers shall estimate the amount of the loss, and in case of their disagreement 'their differences' shall be submitted to the umpire. It is not within the purpose of the provision that one appraiser shall present no estimate to his associate appraiser, but confer with the umpire in the absence of and without any notice whatever to the other appraiser."

[4] But this, substantially, is what was done here, and such action barely rose to the dignity of a real conference between Fleming and Nicholson. Each obtained information upon "his own hook," so to

express it, and then each made figures based on his private information, to a large extent, and ignoring the other appraiser proceeded to make an award. Really Fleming was ignorant of the evidence or information on which Nicholson acted, and Nicholson was ignorant of that on which Fleming acted, and Stultz knew little if anything of the real information on which either or both of the others acted. This award was not the result of information furnished to all or considered by all or by any two, or of the joint deliberation of the three or of any two. True two signed the award, and so two agreed in the final result, but it by no means follows that the two would have agreed on that result had they consulted all the evidence and information possessed by each and deliberated thereon.

I think that an examination and consideration of the evidence of Mr. Fleming is conclusive against the fairness and justice of the award made. "Palmer's report" was the report of a gentleman engaged by the insurance companies, and this report was not accurate or based upon full information or correct information. Mr. Palmer was not sworn, and still Mr. Fleming on this trial testified as follows:

"Q. Now, Mr. Fleming, in other words in making your appraisal of stock you gave full credit to Palmer's report and no credit whatever to the sworn proofs of loss and the affidavits presented by the company; that is the substance of it, is it? A. Yes, sir; you are correct."

This witness also said:

"Q. Did you, while you were sitting as an appraiser on this case, did you ever hear of any figures made by Hollister or Lane on this plumbing? A. No, sir.

"Q. So that if the umpire had before him figures on plumbing made by Mr. Hollister and Mr. Lane he had information before him that you never saw upon the appraisal of this loss? A. That is true."

From reading the evidence of Mr. Fleming, it is apparent that he proceeded on the assumption from the very beginning that the quantities of material, etc., set forth in the proofs of loss were wrong, and that the company did not have the amount set forth in the proofs of loss. In short, he failed to give the sworn proofs of loss and the sworn affidavits submitted in support thereof any consideration whatever.

Without going into detail, the evidence also shows that on the prior trial of one of the cases against one of the insurance companies involved in this loss Mr. Fleming made statements almost exactly opposite to the statements made on the trial of this case in important matters. My impression is that he saw the force of the admissions made by him on that trial and sought to avoid their force and effect by changing his evidence on this trial. His explanation was that he did not understand the questions put to him on the former trial, but it seems to me clear that those questions were very plain and unmistakable, and that the answers were equally clear and emphatic. If it be true that Mr. Fleming was unable to understand and comprehend the questions put to him on the other trial, a fair inference may be drawn that he was incompetent to act as an appraiser in this important matter. The questions

referred to were fair, clear, and explicit. It does not appear that the witness was confused or that he could have misunderstood.

My conclusions are that the appraisal made should be set aside, and that the whole matter should be determined before a court and jury.

There will be a judgment setting aside the award accordingly, with costs.