OPINION OF THE COURT
Martin Schoenfeld, J.
BDO Seidman, LLP petitions this court pursuant to CPLR 7510 for a judgment confirming an arbitration award it received from the American Arbitration Association, Commercial Arbitration Tribunal (AAA) against David H. Brooks. Brooks opposes the petition and cross-moves to vacate the award pursuant to CPLR 7511. For the reasons set forth below, the court finds for BDO and confirms the award.
Background
On April 13, 2009, BDO filed a statement of claim with the AAA against Brooks for recovery of fees for accounting services. Specifically, pursuant to an engagement letter signed on March 26, 2007 (Engagement Letter), Brooks, through his lawyers at the time, hired BDO to provide forensic accounting analysis for preparation for litigation regarding several financial fraud cases pending against Brooks.[1] According to BDO, it was only partially paid for its services prior to termination of employment when Brooks changed lawyers.
*655 On June 10, 2009, Brooks moved, pursuant to CPLR 7503 to stay the arbitration arguing that he was not a party to the Engagement Letter signed by his lawyers and thus could not be compelled to arbitrate. The Honorable Nicholas Figueroa, by order dated July 13, 2009, dismissed Brooks’ petition, finding that he was a party to the arbitration agreement.
The matter then proceeded to an arbitration panel (Panel) which, on a conference call in February 2010, granted BDO permission to move for summary judgment.* [2] Both BDO and Brooks submitted extensive briefs on the summary judgment motion. To support its motion, BDO submitted the Engagement Letter, its invoices, and an affidavit from one of its partners, Anthony Lendez, describing its accounting practices and the reasonableness of its rates. It argued that this evidence proved a prima facie case that it was entitled to summary judgment and that Brooks had failed to raise a triable issue of fact as to the reasonableness of its fees.
In opposition, Brooks argued that EDO’s fees were excessive and unreasonable. In support, he offered an affirmation from his assistant stating that BDO failed to turn over any work product as a result of its analysis. In addition, Brooks submitted a report from his expert, Dennis Kelly of Legal Cost Control, which criticized EDO’s billing procedures, specifically its use of “block billing.” Brooks also argued in his brief that the attorneys who signed the Engagement Letter were necessary parties to the arbitration.
The Panel reviewed the evidence before it and on July 23, 2010 issued an interim award in favor of BDO for $228,341.71 plus 9% interest from April 7, 2008. In its four-page decision, the Panel noted that it “carefully examined [Brooks’] opposition papers” but found no material issues of fact in dispute or legal issues that would preclude an award to BDO. The Panel wrote:
“[W]e are persuaded that Mr. Kelly’s criticisms of Claimant’s billing procedures, whether legitimate or not, are not material, because the Engagement Letter, not Legal Cost Control’s opinion of best practices, set forth the parties’ respective obligations, *656 and with regard to billing, required only that Claimant ‘render invoices concerning this matter on a monthly basis . . . [which] shall include, at a minimum the task completed and time detail.’ Our examination of the invoices persuades us that Claimant complied with these requirements. Therefore, absent any complaints regarding Claimant’s bills prior to Claimant’s commencement of this arbitration, no issues are present warranting an evidentiary hearing.”
The Panel also noted that the Engagement Letter did not require delivery of a report nor did Brooks present evidence that he had previously objected to the failure to deliver a report. In addition, the Panel found that the decision of Justice Figueroa was the “law of this case” and therefore “that [Brooks’] attorneys are not necessary parties.”
The Panel gave BDO 30 days to submit costs, including attorney’s fees, to be included in the final award. Brooks was given 20 days thereafter to submit comments and objections to this application for costs.
On September 23, 2010, the Panel issued its final award. In addition to EDO’s unpaid professional fees determined in the interim award, the Panel granted it legal fees and fees and expenses charged by the AAA and the arbitrators with regard to the action totaling $95,634.29. In its decision, the Panel cites to attachment 1 of the Engagement Letter which states that the nonprevailing party has the responsibility of paying “[a]ll reasonable costs of the parties, as determined by the arbitrators, including but not limited to” attorneys’ fees, and AAA and arbitrator fees. The Panel rejected Brooks’ objection that EDO’s attorneys engaged in improper fee splitting because the bills were issued on the letterhead of attorney Gerald Neal Swartz and not that of Ledy-Gurren. It noted that Mr. Swartz is a partner in the Ledy-Gurren firm, and that the fee splitting rules only apply to lawyers “not associated in the same law firm.”
BDO now moves this court, pursuant to CPLR 7510, to confirm the arbitration Panel’s final award. Brooks opposes this motion and has cross-moved to vacate the award under CPLR 7511. Brooks argues that, as a matter of law, use of summary judgment on the merits is arbitrator misconduct. In the alternative, he argues that issues of fact in the case should have precluded summary judgment.
*657 Discussion
“It is a bedrock principle of arbitration law that the scope of judicial review of an arbitration proceeding is extremely limited.” (Frankel v Sardis, 76 AD3d 136, 139 [1st Dept 2010] [citations omitted].) New York State policy favors arbitration as a way to conserve judicial resources and to expedite resolutions of disputes. (Rio Algom v Sammi Steel Co., 168 AD2d 250, 251 [1st Dept 1990], lv denied 78 NY2d 853 [1991].) Accordingly, where parties have chosen to arbitrate, a court cannot then “examine the merits of an arbitration award and substitute its judgment for that of the arbitrator simply because it believes its interpretation would be [a] better one.” (Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321, 326 [1999].) This is true even if the arbitrator “makes errors of law or fact.” (Id.)
Arbitrator awards may, however, be overturned where they are “violative of a strong public policy,” “totally irrational” or “exceed[ ] a specifically enumerated limitation on [the arbitrator’s] power.” (Frankel, 76 AD3d at 139 [internal quotation marks and citations omitted].) Furthermore, it is “unquestionably” misconduct if arbitrators “refuse to hear evidence pertinent and material to the matter in controversy.” (Gervant v New England Fire Ins. Co., 306 NY 393, 400 [1954] [citations and internal quotation marks omitted].)
Here, Brooks argues that the Panel’s arbitration award should be vacated because as a matter of law it should not have decided the dispute on a summary judgment motion. He notes that there is no case law directly on point in New York. Nevertheless, he supports this position by contending that when an arbitrator refuses to hear pertinent evidence it constitutes arbitrator misconduct which warrants vacatur of the award, citing to Gervant (supra). He then argues that the use of summary judgment by an arbitrator constitutes such a refusal to hear evidence and therefore, as a matter of law, is arbitrator misconduct. He cites to one case for this proposition: Chem-Met Co. v Metaland Intl., Inc. (1998 WL 35272368 [Dist Ct, DC 1998]), an unpublished District of Columbia District Court opinion.
This court is unpersuaded by Brooks’ argument for several reasons. First, even if use of summary judgment in arbitration proceedings could be considered misconduct when there is a refusal to hear pertinent evidence (something that has not been considered by the New York State courts), here no such refusal occurred. On the contrary, the Panel allowed extensive *658 briefing and many evidentiary submissions by both Brooks and EDO. Brooks has not made any argument or presented any proof that the court restricted the amount or type of evidence that he was allowed to submit. In fact, the record indicates that when Brooks failed to file his expert report in the time given him, the Panel granted him an extension. Moreover, everything in the record indicates that Brooks took full advantage of his opportunity to present evidence. He provided the Panel with Dennis Kelly’s lengthy report and with Brooks’ assistant’s affidavit. Nor is there any indication that either party was denied a request to present additional evidence or that either party requested a hearing on the evidence presented.
Second, while there does not appear to be any published New York State case addressing the issue, several other courts have found that arbitrators are not compelled to conduct hearings, and may decide a case on summary judgment. This is especially true where, as here, the parties were given an opportunity to present documentary evidence which was considered by the arbitrators in rendering their decision. (See TIG Ins. Co. v Global Intl. Reins. Co., Ltd., 640 F Supp 2d 519, 523 [SD NY 2009] [finding summary judgment appropriate in federal arbitration proceeding where parties were allowed “substantial written briefing” and presentation of evidence]; Campbell v American Family Life Assur. Co. of Columbus, Inc., 613 F Supp 2d 1114, 1120 [D Minn 2009] [noting that summary judgment was appropriate in arbitration where plaintiff could point to “no evidence that they were not allowed to submit to the arbitrators”]; McClellan v Service Corp. Intl., 2010 WL 476005, *3-4, 2010 Ky App Unpublished LEXIS 115, *13-14 [Ky App 2010] [“arbitrator was within his authority to entertain and grant summary judgment” where arbitrator “reviewed the briefs of the parties and the record . . . before rendering his decision”]; see also In re Arbitration between Griffin Indus., Inc. & Petrojam, Ltd., 58 F Supp 2d 212, 219 [SD NY 1999] [arbitrators may base their decisions solely on documentary evidence so long as choice to do so is reasonable].)
In contrast, the facts in the one unpublished case, Chem-Met Co. v Metaland Intl., Inc. (1998 WL 35272368 [1998]), relied upon by Brooks to support his position are readily distinguishable from the instant case. In that case, unlike here, “the arbitrators admitted no documents into evidence.” (1998 WL 35272368, *2.) Moreover, Chem-Met Co., the party appealing the arbitrator’s decision, had “repeated[ly]” made “written and *659 oral requests for an evidentiary hearing” putting the arbitrators “on notice of their duty to hold a hearing.” (1998 WL 35272368, *4.) Here, there is no indication that such requests were made. Finally, in Chem-Met Co., the arbitrators entered summary judgment “without a written opinion.” (1998 WL 35272368, *2.) Here, the Panel wrote both a four-page opinion and a three-page opinion, discussing in detail the evidence it relied upon in making its decision.
Third, any objection Brooks may have had to the use of summary judgment in his arbitration proceeding was waived. A party who fails to object to an arbitrator’s alleged misconduct until after an adverse ruling “effectively waives” his right to object. (Storey v Searle Blatt Ltd., 685 F Supp 80, 82 [SD NY 1988]; see Matter of Kubarych v Siegel, 156 Misc 2d 935, 937 [Sup Ct, NY County 1993] [“(T)he law will overlook, on the grounds of waiver, a claim of misconduct where the complaining party had either actual or constructive knowledge of the arbitrator’s impropriety, had an opportunity to object and failed to do so before the award was rendered”]; Campbell, 613 F Supp 2d at 1116.) As discussed above, Brooks not only submitted thorough briefs to the Panel but entered evidence to support his position against the summary judgment motion. He never, however, objected to the arbitrators’ use of summary judgment in the proceeding. Nor is there any indication that he requested, either in writing or orally, an evidentiary hearing on the merits. Thus, even if the use of summary judgment in arbitrations were to be considered misconduct, Brooks waived his objection to its use.
Finally, as this does appear to be a case of first impression, this court, like many courts in other jurisdictions, declines to find that the use of summary judgment in arbitration proceedings is per se error or arbitrator misconduct. (See TIG Ins. Co., 640 F Supp 2d at 523; Campbell, 613 F Supp 2d at 1119; Sherrock Broth., Inc. v DaimlerChrysler Motors Co. LLC, 465 F Supp 2d 384, 392-394 [MD Pa 2006]; McClellan, 2010 WL 476005, 2010 Ky App Unpublished LEXIS 115.) Where, as here, the arbitrators: (1) gave the parties time to thoroughly brief the issues and submit evidence; (2) carefully considered the evidence presented; (3) issued a written decision; and (4) were confronted with no objections to the use of the procedure, summary judgment was properly used.
Brooks also argues that the facts of this case preclude summary judgment. In particular, he states that two issues of *660 material fact exist: (1) whether EDO’s bills satisfy its prima facie burden, and (2) whether the absence of work product creates a question of reasonable value of EDO’s work. Brooks arguments are nothing more than an attempt to reargue the substance of the case and, thus, are unpersuasive. (See TIG Ins. Co., 640 F Supp 2d at 523 [“(T)he law does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator’s award” (citations and internal quotation marks omitted)].)
As set forth above, the court’s power to overturn an arbitrator’s decision, even if the arbitrator made errors of law or fact, is extremely limited. Here, the Panel competently addressed both of Brooks’ alleged factual issues in its decision. For instance, in considering Dennis Kelly’s report, it noted that his conclusions did not create a factual issue necessitating a hearing because EDO’s invoices complied with the requirements of the Engagement Letter. In addition, the Panel rejected Brooks’ argument concerning lack of work product, explaining that it was not required under the Engagement Letter and that Brooks had made no prior objections to not having received a report from BDO. The Panel provided BDO and Brooks with two well thought out decisions based on careful review of the briefs and the evidence presented. As courts accord “substantial deference” to the “arbitrators’ interpretation of the issues and the scope of their authority” (Frankel, 76 AD3d at 140), Brooks’ request to vacate the Panel’s decision must be denied.
Therefore, in accordance with the foregoing, it is ordered that David H. Brooks’ cross motion to vacate the arbitration award is denied; and it is further adjudged that the petition is granted and the award rendered in favor of BDO Seidman, LLP and against David H. Brooks is confirmed; and it is further adjudged that respondent BDO Seidman, LLP does recover from petitioner Brooks, the amount of $228,341.71, plus interest at the rate of 9% per annum from the date of April 7, 2008, as computed by the Clerk in the amount of $_, together with costs and disbursements in the amount of $95,634.29, for the total amount of $_, and that BDO Seidman, LLP have execution therefor.

. Brooks, former CEO of DHB Industries, Inc., a leading supplier of body armor used in Iraq and Afghanistan by the United States military, was indicted, and ultimately convicted of using company funds for personal benefit and falsely inflating the value of DHB’s stock. When Brooks sold his shares, he allegedly made more than $185 million due to the falsely inflated price. *655 (See affidavit of Anthony M. Lendez, CPA, dated Apr. 30, 2010, annexed to petitioner’s cross-moving papers as exhibit 2.)

. According to BDO, Brooks’ counsel requested an adjournment without a date for a hearing because of Brooks’ pending trial. Thereafter, Brooks was incarcerated, making a hearing difficult. (Affirmation of Deborah Bass, Esq. dated Sept. 28, 2010.)